JOSEPH J. O'DONOHUE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68263.   Filed January 21, 1960.

*Walter S. Rothschild, Esq.*, for the petitioner.
*Chapman H. Belew, Jr., Esq.*, for the respondent.

BRUCE, *Judge:* This proceeding involves deficiencies and additions to tax as follows:

| Year | Income tax | Additions to tax | | |
|---|---|---|---|---|
| | | Sec. 291(a) | Sec. 294(d) (1)(A) | Sec. 294(d)(2) |
| 1951 | $1,289.56 | | $279.54 | $186.35 |
| 1952 | 1,802.05 | | 497.59 | 331.73 |
| 1953 | 3,475.12 | $308.96 | 556.13 | 370.75 |

Petitioner has conceded all issues raised in his petition except the determined deficiencies and additions to tax for the years 1951, 1952, and 1953 under sections 291(a) and 294(d) of the Internal Revenue Code of 1939, resulting from respondent's disallowance of deductions for life insurance premiums. The sole remaining issues are whether petitioner is entitled to deduct premiums paid in his behalf on life insurance policies covering the life of petitioner, which policies were procured by petitioner and assigned as collateral to secure bonds on which petitioner was the obligor, and whether petitioner is liable for the additions to tax as determined by respondent.

FINDINGS OF FACT.

The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Petitioner, during the period in question, was an individual residing in Washington, D. C. He filed individual income tax returns for the years 1951, 1952, and 1953 with the collector or director of internal revenue, Baltimore, Maryland. The return for 1953 was filed on June 17, 1954. Petitioner did not file declarations of estimated tax for any of the years involved. Petitioner reported his income on the basis of cash receipts and disbursements. Petitioner's sole source of income reported on his returns for the years involved was from a beneficial interest in a trust estate created under a declaration of trust executed by his great-grandfather in 1901 and known as the Rose M. Taylor Trust. By the terms of the Rose M. Taylor Trust petitioner was entitled to receive one-half the total net income of the trust. In addition, in the opinion of legal counsel, petitioner held a remainder interest in one-half the corpus of the trust, which remainder was subject to divestment in the event petitioner predeceased his aunt, Dorothy Taylor Lethbridge.

In the years prior to 1948 the petitioner became indebted to various individuals. In 1948 this indebtedness had reached the total sum of $160,000. At the insistence of his creditors, on April 15, 1948, the petitioner transferred all of his right, title, and interest in the Rose M. Taylor Trust to the First National Bank of Philadelphia, in trust, to secure certain bonds which were then issued to the creditors of petitioner. The First National Bank of Philadelphia is hereinafter referred to as trustee. These bonds were the obligation of the petitioner. The trustee was by the terms of the transferring instrument, hereinafter referred to as the bond indenture, required to receive and apply the income from the Rose M. Taylor Trust in order of priority as follows: (1) To pay trustee commissions and expenses; (2) to pay the premiums on certain life

insurance policies to the extent petitioner failed to pay such premiums; (3) to pay interest on the bonds; (4) to pay specified amounts into a sinking fund for bond amortization, and (5) to pay the remainder to petitioner. The premiums contemplated in (2) above are the premiums in question here.

The policies were ordinarily life insurance covering petitioner, procured by him and assigned to the trustee at the insistence of creditors and as a part of the security for the bonds, to guard against the divestment of petitioner's remainder interest in the corpus of the Rose M. Taylor Trust should petitioner predecease his aunt. The policies insured petitioner in the total amount of $163,500. To the extent income was available on the Rose M. Taylor Trust after payment of trustee commissions and expenses the said trustee was required to pay the premiums. However, the bond indenture also contained a covenant by the petitioner to pay, otherwise than from the moneys coming into the hands of the trustee, the premiums due on the policies. The bond indenture further provided, in the event of default in the payment of premiums due on the policies, that the trustee, in its discretion, upon the written request of the holders of at least 5 per cent in aggregate principal amount of the bonds then outstanding, could sell the property held by it under the bond indenture, including all of petitioner's interest in the Rose M. Taylor Trust. As bonds were retired or redeemed prior to maturity, the trustee was empowered to surrender the policies to petitioner provided, however, that the trustee retained possession or control of policies of a face amount of not less than $3,500 in excess of the aggregate principal sum together with unpaid interest of bond indebtedness outstanding. In the event petitioner discharged the bonds by payment, the insurance policies were to be returned to the petitioner. Upon the death of the petitioner the proceeds of the policies then in the hands of the trustee were payable to the trustee and the proceeds of the policies then in the hands of the petitioner were payable as the petitioner might direct. In the event petitioner died before his aunt, the proceeds of the insurance would be used to defray the obligation of petitioner. In the event petitioner's aunt died before the petitioner there was no provision the policies be returned to the petitioner.

The income of petitioner from the Rose M. Taylor Trust was received by the trustee and applied according to the terms of the bond indenture in each of the 3 years in question. This included payment of the premiums on the life insurance policies as follows: $3,649.95 in 1951, $3,622.95 in 1952, and $3,575.97 in 1953. In his income tax return for each of the years in question, petitioner included in his gross income his entire share of the income from the

Rose M. Taylor Trust, and deducted therefrom the amount of the premiums paid by the trustee in each respective year. These amounts were disallowed by respondent.

### OPINION.

Petitioner contends that payments of the insurance premiums are deductible under section 23(a)(2) of the Internal Revenue Code of 1939, as amended, as ordinary and necessary nonbusiness expenses incurred for the conservation of property held for the production of income. This is so, he argues, because of the covenant in the bond indenture which could give rise to a forced sale of petitioner's interest in the Rose M. Taylor Trust in the event petitioner failed to pay the premiums. We do not agree with this contention. By the terms of the bond indenture petitioner was required to provide collateral satisfactory to his creditors. This collateral included the insurance policies upon which the premiums involved herein were paid. The procurement of the policies and the payment of the premiums was therefore a means of providing collateral for a personal obligation owed by the petitioner. This was the primary and immediate purpose in the procurement of the policies and it was likewise the primary and immediate purpose for the payment of the premiums. The fact that by paying the insurance premiums petitioner could forestall a possible sale of his interest in the Rose M. Taylor Trust was merely coincidental to the provision of collateral security for his personal indebtedness. The payment of the premiums on the life insurance policies in no way affected the corpus of the Rose M. Taylor Trust or the production of income by such property. We therefore hold that the payment of the insurance premiums was not such an ordinary and necessary expense for the conservation of property held for the production of income as is contemplated by section 23(a)(2). Cf. *Warren Leslie, Sr.*, 6 T.C. 488, 494–495; *Marvin J. Blaess*, 28 T.C. 710. See also *F. Ewing Glasgow*, 21 T.C. 211. Respondent did not err in disallowing the insurance premiums involved.

Respondent has determined additions to tax under sections 291(a), 294(d)(1)(A), and 294(d)(2) of the Internal Revenue Code of 1939. No evidence was presented relating to the addition to tax under section 291(a) for the year 1953, and respondent's determination with respect thereto is sustained. Respondent's determination of additions to tax under section 294(d)(1)(A) "for failure to file" declarations of estimated tax is likewise sustained. In the light of the recent decision of the Supreme Court of the United States in *Commissioner* v. *Acker*, 361 U.S. 87 (1959), however, respondent's determination of additions to tax under section 294(d)(2) is denied.

*Decision will be entered under Rule 50.*