ALAN C. WALTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walter v. Commissioner
Docket No. 229-74.
United States Tax Court
T.C. Memo 1980-31; 1980 Tax Ct. Memo LEXIS 554; 39 T.C.M. (CCH) 987; T.C.M. (RIA) 80031; February 4, 1980, Filed *554 (1) P moved to have the burden of proof shifted to R, alleging that the determinations in the notice of deficiency were without basis, that R did not follow his own procedures during his audit of P, and that the selection of P for audit was based on improper grounds. Held, motion denied since P has failed to prove any grounds for looking behind the notice of deficiency. (2) P, who was a minister of the Church of Scientology, was associated with a number of missions of the church. He had helped to found most of them, and although he did not conduct the day-to-day affairs of the missions, he continued to advise them and to exercise supervision over them. None of the missions was incorporated, and P could withdraw their funds without accounting to anyone for them. Held, P has failed to show that he was merely an employee of the missions and failed to show that their income did not belong to him or was not under his control; accordingly, he is taxable on all their income. (3) Held, P was liable for the tax on self-employment income of sec. 1401, I.R.C. 1954, since he was not an employee of the missions. (4) Held, P was not taxable on *555 certain deposits in his bank accounts since the Court was satisfied that those deposits represented transfers of the income of the missions already taxed to P. (5) Held, P was not entitled to exclude amounts from his income as rental allowances for a parsonage under sec. 107, I.R.C. 1954, since he failed to show that any amounts he may have received were so designated. (6) Held, P was not entitled to deduct certain claimed travel expenses since he failed to satisfy the substantiation requirements of sec. 274(d), I.R.C. 1954. (7) Held, P was liable for an addition to tax under sec. 6651(a), I.R.C. 1954, since he filed his 1966 and 1968 Federal income tax returns late and failed to show that there was reasonable cause for failure to file them timely. (8) Held, P was liable for an addition to tax under sec. 6653(a), I.R.C. 1954, since he failed to show that the underpayment of taxes was not due to negligence on his part. Claude R. Wilson, Jr., for the petitioner. Joe K. Gordon and Glenn D. Wilkinson, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioner's Federal income taxes: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
1966
$ 5,221.07
$ 1,305.27
$ 318.51
1967
16,882.52
844.13
1968
90,920.34
13,638.05
4,677.91
*558 The issues to be decided are: (1) Whether the burden of proof in this case should be shifted from the petitioner to the Commissioner; (2) whether the petitioner, a minister of the Church of Scientology, is taxable on the income of the Scientology missions with which he was associated; (3) whether the petitioner is liable for the tax on self-employment income under section 1401; (4) whether the petitioner is taxable on certain deposits made to his bank accounts; (5) whether the petitioner was entitled to deduct his expenses of traveling among the Scientology missions; (6) whether the petitioner was entitled to exclude amounts from his income as rental allowance for a personage; and (7) whether the petitioner is liable for the additions to tax under section 6651(a) for failure to file timely returns and under section 6653(a) for negligence. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Alan C. Walter, resided in Sacramento, Calif., when he filed his petition in this case. With his wife, he filed joint Federal *559 income tax returns for 1966 and 1967 with the Internal Revenue Service, Dallas, Tex. The 1966 return was filed April 15, 1968; the 1967 return was filed timely. The petitioner and his wife filed a joint return for 1968 on July 22, 1969, with the Internal Revenue Service Center, Austin, Tex. In the early 1960s, the petitioner studied Scientology in England with L. Ron Hubbard, the founder of the Church of Scientology. He received the highest level of training possible and was ordained a minister by the church in May 1963. Soon after his ordination, the petitioner accepted an offer to be minister of the Church of Scientology mission in Dallas, Tex.; he came to the United States on November 10, 1964, to assume his position. The petitioner paid nothing for his opportunity to be minister of the Dallas mission. However, at the time of the petitioner's arrival, the mission had few, if any, assets, a staff of only a few persons, and no fixed headquarters. By 1967, interest in Scientology had increased both in Dallas and elsewhere. The staff of the Dallas mission had increased to 20 to 30 persons, and in other cities, individuals were seeking to organize missions. By 1967, the *560 petitioner had become known among those interested in Scientology, and his aid was thus sought in founding missions. In 1967 and 1968, the petitioner furnished training in Scientology and otherwise helped organize missions in Boston, New York, Kansas City, St. Louis, New Orleans, and Charlotte, N.C.
None of the missions was incorporated, and none had any board of directors, congregational organization, or similar group overseeing it. The Church of Scientology in England and the Church of Scientology in California, which had become the "mother church" in the United States, furnished the petitioner and the mission staffs with doctrinal guidance only and prescribed few, if any, operating rules or procedures to circumscribe their power. There was no written contract between the petitioner and the missions laying out specifically the relationships between them. After their founding, the new missions were run mainly by their local staffs. The staffs performed routine work, such as printing and book purchasing; they provided counseling and training in Scientology; and they managed their day-to-day financial affairs. After the missions were under way, the petitioner was not intimately *561 involved in these matters; instead, he served mainly in a supervisory capacity, helping the missions deal with problems they might encounter in becoming established. Much of the petitioner's time was spent in lecturing on Scientology and not on mission business. During 1966 through 1968, he rarely performed the sacerdotal functions of baptisms, marriages, and funerals. During 1966 through 1968, the petitioner exercised broad control over the finances of the Dallas and other missions with which he was associated. He was entitled to compensation, although the amount thereof was not fixed. Although the mission staffs managed their petty cash funds and paid usual expenses, they did not exercise full control of their finances. The petitioner was a signatory on many mission bank accounts, and he drew on the accounts freely without ever being questioned or required to account therefor. When funds were available, he drew on the accounts for his personal use and to invest in the stock market on behalf of the missions. When finances were sound, he also paid 10 percent of the missions' earnings to the mother church in California. When finances were poor, the petitioner sometimes drew *562 on his own funds to aid the missions, and as needed, he shifted funds among the missions. During the years in issue, the petitioner kept no personal records of these transactions or any others in which he was involved. The power to remove a minister was held by the mother church. At the end of 1968, the mother church removed the petitioner from his missions. By this time, the staff of the Boston mission had grown to about 75; the staff of St. Louis to about 25; and the others had staffs of from 2 to 5 persons. The petitioner was paid nothing upon leaving the missions. The missions had the following aggregate business income in the years in issue: 1966
$ 28,502.94
1967
46,221.66
1968
177,147.40
On his Federal income tax returns for those years, the petitioner reported the following amounts of business income: 1966
$13,655.88
1967
24,216.90
1968
20,000.00
From those amounts, he excluded $1,200 per year as rental allowances, and he deducted as his expenses of traveling among the missions $2,200 in 1966 and $2,900 in each of the years 1967 and 1968. During the tax audit of the petitioner and the missions, the agent of the Commissioner *563 conducted an analysis of the petitioner's bank deposits and determined that deposits in the amounts of $1,993.20 for 1966 and $18,898.74 for 1967 had not been explained by the petitioner. During this audit, the income of the missions was also computed. The agent used the missions' books and records for this purpose. While the audit was being conducted, Scientology organizations in the United States were becoming, or had become, targets of strict scrutiny by the Internal Revenue Service. The IRS issued a manual supplement, No. 42G-228, dated September 2, 1970, providing special procedures for dealing with Scientology organizations, and it listed the Church of Scientology in a "tax resister project." However, the agent conducting the audit was unaware that the Church of Scientology was on any such list. In his notice of deficiency, the Commissioner determined that the petitioner should have included all the business income of the missions in his income, although he was given credit for the business income reported by him, that he should have reported the unexplained bank deposits as income, that he was not entitled to any exclusion for a parsonage allowance, and that he was not *564 entitled to a deduction for his traveling expenses. The Commissioner also determined that the petitioner was liable for the tax on self-employment income and for the additions to tax under section 6651(a), relating to the filing of timely returns, and section 6653(a), relating to negligence. OPINION At trial, the petitioner moved that the burden of proof be shifted to the Commissioner, and initially, we must dispose of that motion. Under Rule 142, Tax Court Rules of Practice and Procedure, the burden of proof is normally on the petitioner. However, the petitioner contends that we should shift the burden of proof because (1) the deficiency, as determined by the Commissioner, was "wholly without merit in facct or law," (2) the Commissioner failed to follow his own rules in conducting the audit, and (3) in selecting the petitioner for audit, the Commissioner was motivated by a desire to "seek and destroy" the Church of Scientology. It is well established that this Court generally will not look *565 behind a deficiency notice "to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations." Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974); see also Estate of Brimm v. Commissioner,70 T.C. 15, 22 (1978); Human Engineering Institute v. Commissioner,61 T.C. 61, 66 (1973). However, we have recognized that on rare occasions, it is proper to look behind the notice of deficiency. See Suarez v. Commissioner,58 T.C. 792 (1972); Jackson v. Commissioner, 73 T.C.     (Nov. 28, 1979). At the outset, it should be pointed out that even in Suarez and Jackson, the burden of proof was not shifted to the Commissioner; rather, in those cases, the Commissioner was required to go forward with the evidence and to show the basis for the deficiency. Suarez v. Commissioner,58 T.C. at 814; Jackson v. Commissioner, 73 T.C. at    . Moreover, Suarez and Jackson do not apply to the present case. In Suarez, we held that when the Commissioner's determinations in a deficiency *566 notice are based on unconstitutionally obtained evidence, the determinations will be denied their usual presumption of correctness. [2] In the present case, there is no indication that any evidence used by the Commissioner was obtained unconstitutionally. In Jackson, we also denied the deficiency notice its presumption of correctness because the determination that the petitioner had received unreported income was based solely on "a secondhand report of peripheral statements made by an unreliable informant." 73 T.C. at    . The petitioner contends that in this case, the deficiency notice was not based on any reliable evidence. However, the amount of the deficiency determined by the Commissioner was based on the books and bank records of the petitioner and the missions. If the records were unreliable, it is not the fault of the Commissioner. In addition, the evidence shows that the petitioner had broad authority over the funds of the missions, and in view of such evidence, it was not arbitrary for the Commissioner to attribute the income of the missions to the petitioner. *567 The petitioner's second argument is that the Commissioner did not follow his own rules in auditing him. He alleges that the Commissioner or his agents violated their own rules by not sending him sufficient information to reveal how the deficiency was computed. The Commissioner denies that any established audit procedures were violated. Initially, it appears that the notice of deficiency was adequate to inform the petitioner. It certainly made clear to him the amount and source of the income which the Commissioner had determined was taxable to him. It also made clear to the petitioner that the Commissioner was taking the position that the business income of the missions was attributable to him. Moreover, if the petitioner considered that the information in the notice was insufficient to advise him of the nature of the claim of the Commissioner, the petitioner could have used the rules of discovery to seek more information. Estate of Allensworth v. Commissioner,66 T.C. 33 (1976). In addition, if the petitioner is relying on the alleged failure to follow the administrative procedures established by the Commissioner, it is well settled that the failure to follow *568 such procedures does not affect the validity of the notice of deficiency. See,e.g., Estate of Brimm v. Commissioner,supra;Boyer v. Commissioner,69 T.C. 521 (1977); Levine Brothers, Inc. v. Commissioner,5 B.T.A. 689 (1926). The petitioner's third argument is that the Commissioner was improperly motivated in selecting him for audit. He introduced into evidence IRS Manual Supplement No. 42G-228, dated September 2, 1970, which provides special procedures to be followed in dealing with Scientology organizations. He also introduced into evidence a newspaper article from 1975 purporting to reveal the existence of a "mystery list" of targets of an IRS "tax-resister project," as well as what appears to be part or all of the list itself. Among the targets named in the list and in the newspaper is the Church of Scientology. The petitioner contends that the existence of the special procedures for Scientology organizations and the fact that the Church of Scientology was considered a tax resister prove that IRS was engaged in a constitutionally impermissible effort to undermine the influence and well being of the Church of Scientology *569 and its ministers. In Greenberg's Express, Inc. v. Commissioner,62 T.C. at 328, we observed that "it is conceivable that there may be situations where a taxpayer should be accorded some relief, if he were able to prove that he was selected for audit on a clearly unjustifiable criterion." However, this is not such a case. The petitioner's evidence does show that the Church of Scientology was given special treatment by the IRS; but there is no indication that the IRS ever sought to do anything other than collect taxes lawfully imposed by the United States. In fact, the manual supplement appears to have been inspired by a Court of Claims decision, Founding Church of Scientology v. United States,188 Ct. Cl. 490, 412 F. 2d 1197 (1969), cert. denied 397 U.S. 1009 (1970), holding that the Church of Scientology did not qualify for tax exemption. The IRS was justified in devoting special care to Scientology cases in light of the court's decision. Moreover, in this particular case, the revenue agent who audited the missions was not aware that *570 the Church of Scientology was considered a tax resister by the IRS. He testified that he had never seen any such list with the Church of Scientology or the petitioner on it. In summary, the petitioner has failed to show he was selected for audit as a part of an illegal attack on the Church of Scientology; therefore, we deny the petitioner's motion to shift the burden of proof to the Commissioner. The second, and principal, issue for decision is whether the petitioner is taxable on the business income of the missions. There is a preliminary question as to the amount of their income. In the notice of deficiency, the Commissioner set forth his computations as to the amount of such income, and since we have denied the petitioner's motion to shift the burden of proof, he has the burden of proving such computations to be incorrect. Gajewski v. Commissioner,67 T.C. 181, 198-199 (1976), affd. without published opinion 578 F. 2d 1383 (8th Cir. 1978). He has not seriously disputed those computations, and he has offered no evidence to rebut them. Consequently, we have found, as a fact, that the income of the missions was the amounts computed by the Commissioner. *571 It is the Commissioner's contention that the petitioner operated the missions as a sole proprietorship and that he thus owned all their income and was taxable on it. Alternatively, the Commissioner contends that even if the missions were separate taxable entities, the petitioner is taxable on all their income since he had complete control of such income and since he has not shown that the income was in fact distributed to anyone else or retained in the missions. In support of his position, the Commissioner relies on the doctrines of constructive receipt and claim of right. The petitioner's position is that he was merely an employee of the missions, did not own them, and therefore, is not taxable on their income. It is axiomatic that an individual is considered to be the owner of income for tax purposes if he earned the income or had command of it. Lucas v. Earl,281 U.S. 111 (1930); Nelson v. Commissioner,6 T.C. 764 (1946). The parties agreed that for purposes of the trial of this case, the exemption of the missions was not at issue. If the missions *572 were separate taxable entities, irrespective of whether they were exempt from taxation, and if the petitioner acted merely as an employee or agent thereof in conducting the affairs of the missions, he is not taxable on the income of the missions. However, if he operated the missions in his own capacity or if he could or did exercise unlimited control over the disbursement of their unaccounted-for income, he is taxable on their income. The record in this case is regrettably vague, but since the petitioner had the burden of refuting the Commissioner's determination, we must conclude that, on this record, the petitioner has failed to show that he was not instrumental in earning the income which the missions realized, or that he was a mere employee or agent. To begin, if the petitioner was an employee or agent, he has produced no evidence of any contract of employment or agency. Every indication in this record is that the petitioner worked for no one but himself. The petitioner testified that he was instrumental in founding the missions. After they were established, he admitted that he shifted funds among them and withdrew funds from their bank accounts without accounting to anyone. *573 When the funds of the missions were insufficient, he provided funds to aid them. The petitioner testified that he was paid a "salary," but he offered us no proof of any sort. We believe that it is more likely he simply withdrew funds for his personal use when the funds were available, or that he arranged to have the funds withdrawn for him. In fact, the petitioner testified that he was "paid" only when funds were available. Thus, the evidence of record contains no restriction on the petitioner's access to the funds of the missions, and indeed, such evidence shows that he had access to such funds without any limitation. The nature of the petitioner's work also makes it difficult to characterize him as an employee or agent. He acted independently in carrying on his work. There is no indication in the record that he has any duties which he was required to perform or that he was required to answer to anyone associated with the missions. None of the missions had a board of directors, congregational organization, or similar controlling group; indeed, any supervision the missions may have received appears, on the basis of the petitioner's testimony, to have come only from him. *574 In his briefs, the petitioner argues vehemently that he could not have been the owner of the missions and of their income since he never owned any of the assets of the missions. He testified that he paid no money on his arrival in Dallas, and he was in turn paid no money on his departure from the missions. However, he failed to prove that the missions owned substantial assets and that the production of their income depended upon the ownership of such assets. We were not told what assets the missions had which could have been bought and sold. In fact, the petitioner admitted that at the time he arrived in Dallas, the few missions in the United States "were run in whatever quarters were available, someone's house, a room, and they would have a staff of two or three." On the record, the fact that the petitioner did not buy and sell the missions furnishes no basis for not taxing him on their income. The petitioner also argues that the fact that the mother church was able to remove him as minister of the missions in 1968 shows conclusively that he was merely an employee. Had he been more than an employee, he contends, he could not have been removed. We are unconvinced. Founding Church of Scientology v. United States,supra, *575 involved similar facts. There, the Founding Church, in Washington, D. C., paid certain percentages of its income to L. Ron Hubbard, the founder of the Scientology movement. The Court of Claims found, "Such an arrangement suggests a franchise network for private profit * * *." 412 F. 2d at 1201. As a result, the court held that the Founding Church did not qualify for tax exemption under section 501(c)(3). On the record of the present case, it also appears that the missions were operated as a franchise. The petitioner and the others who ran the missions were given guidance and identity by their association with the mother church; the mother church received in return 10 percent of the mission income. In removing the petitioner as minister, the mother church was simply cancelling the petitioner's interest in the franchises. We are satisfied that the petitioner was chiefly responsible for earning the mission income and that he had command of it. Therefore, he is taxable on that income unless the missions constituted separate taxable entities. The petitioner does not seriously contend that the missions were independent entities, and we cannot so find on this record: *576 there is no evidence they were trusts, corporations, or associations taxable as corporations under section 7701. Moreover, even if the missions were separate taxable entities, the income of the missions is still taxable to the petitioner. It is well settled that when a person exercises control over disbursements of income for which there has been no accounting, he has a special obligation to show that he did not receive the income. Potito v. Commissioner, 534 F. 2d 49 (5th Cir. 1976), affg. per curiam a Memorandum Opinion of this Court, cert. denied 426 U.S. 1039 (1977); Parker v. Commissioner, 365 F. 2d 792 (8th Cir. 1966), affg. a Memorandum Opinion of this Court, cert. denied 385 U.S. 1026 (1967); Chesbro v. Commissioner, 21 T.C. 123 (1953), affd. per curiam 225 F. 2d 674 (2d Cir. 1955), cert. denied 350 U.S. 995 (1956). In this case, the petitioner has utterly failed to show that he did not receive the income of the missions. Although he made a motion to shift the burden of *577 proof to the Commissioner, his failure to produce any evidence showing that the income of the missions was not received by him cannot be explained by the fact that such motion was pending. He never requested the Court to rule in advance on such motion; although he expressed confidence in the merit of his motion, he recognized that such motions were rarely granted, and after making the motion, he proceeded to present his evidence. To hold the petitioner liable for the tax on all the income of the missions because of his failure to carry the burden of proof may seem to be a drastic consequence; yet, he claimed to have six boxes of records in the courtroom, but he never offered any of such records. We are at a loss to understand why those records were not produced if they would in fact show that the income of the missions was retained by them or distributed to other persons. The failure to produce such evidence, when it was readily available, warrants the inference that it was unfavorable to the petitioner's claim. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (10th Cir. 1947). It is also significant that in *578 1966 and 1967, the petitioner reported approximately 50 percent of the income of the missions, but for 1968, when the income of the missions rose to $177,147.40, he reported income of only $20,000.00. When we weigh all these considerations, we are compelled to conclude that the petitioner is taxable on all the income of the missions. The third issue for decision is whether the petitioner is liable for the tax on self-employment income under section 1401. The petitioner's sole argument is that he was an employee of the missions and therefore had no selfemployment income as defined in section 1402. In view of our holding on the previous issue, we reject the petitioner's argument and hold that he did realize income subject to tax under section 1401. The fourth issue for decision is whether the petitioner is taxable on the unexplained deposits in his bank accounts. He has the burden of showing that such deposits did not represent income. See Armes v. Commissioner, 448 F. 2d 972 (5th Cir. 1971), affg. on this issue a Memorandum Opinion of this Court. At trial, the testimony with respect to such deposits was vague. However, we have already held that the petitioner *579 is taxable on the income of the missions, and it appears that the unexplained bank deposits probably represented the transfer of those funds to the petitioner. Moreover, if we were to treat the unexplained bank deposits in 1967 as income in addition to the mission income received by the petitioner, his total income for the year would greatly exceed the income from the missions. For these reasons, we are satisfied that the unexplained bank deposits have already been taxed to the petitioner as a result of our holding that he is taxable on the income of the missions. The fifth issue before us is whether the petitioner was entitled to a deduction for travel expenses incurred in driving his car among the missions. The petitioner testified that he computed his expenses by estimating the total miles he drove each year traveling among the missions and figuring the expenses at 7 or 10 cents per mile. The deduction is otherwise unsubstantiated, and the Commissioner insists that it should be disallowed for that reason. Section 274(d) provides in part: No deduction shall be allowed-- (1) under *580 section 162 or 212 for any traveling expense * * * * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * *, (C) the business purpose * * * When enacting section 274(d), Congress made clear that if the substantiation requirements are not satisfied, no deduction is to be allowed based simply on an estimate by the taxpayer. Sanford v. Commissioner, 50 T.C. 823 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). The petitioner may have incurred substantial expenses in driving among the farflung missions; but he has not satisfied the recordkeeping requirements of section 274(d). Without such records, no deduction is allowable for such expenses. The sixth issue to be decided is whether the petitioner properly excluded from income in each of the years is issue $1,200 as a rental allowance. Section 107 provides in part: In the case of a minister of the *581 gospel, gross income does not include-- * * *
(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home. Section 1.107-1(b), Income Tax Regs., defines "rental allowance" as "an amount paid to a minister to rent or other-wise provide a home if such amount is designated as rental allowance pursuant to official action taken * * * by the employing church." (Emphasis added.) In Eden v. Commissioner, 41 T.C. 605 (1964), we held that the exclusion is not allowable when the designation requirement is not satisfied. The petitioner has made no attempt to show that any amounts he may have received as a rental allowance were so designated. In fact, at trial, he did not even so testify. Accordingly, we hold that he is not entitled to any exclusion under section 107 for a rental allowance for a parsonage. Since the petitioner failed to prove that the designation requirement was satisfied, we no not reach the other questions which might arise in deciding whether he is entitled to an *582 exclusion under section 107. The seventh issue is whether the petitioner is liable for the additions to tax under section 6651(a) and section 6653(a). Section 6651(a) provides for an addition to tax when a return is not timely filed unless the failure to do so is shown to be due to reasonable cause. Section 6653(a) provides for an addition to tax when an underpayment of tax is due to intentional disregard of rules and regulations or due to negligence. Since the Commissioner determined that the petitioner was liable for such additions to tax, the petitioner must carry the burden of showing that he is not so liable. see, e.g., Smith v. Commissioner, 66 T.C. 622 (1976); O'Donohue v. Commissioner, 33 T.C. 698 (1960). He offered no evidence to explain the reasons for the delay in filing the returns for 1966 and 1968; nor did he offer any evidence to show that the underpayments of tax were not due to negligence; his only position was that there were no deficiencies. Since we have held that the petitioner is liable for deficiencies in his taxes, we, therefore, *583 sustain the additions to tax under sections 6651(a) and 6653(a) on the deficiencies determined by us. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. See, however, the statements of the Supreme Court in United States v. Janis,428 U.S. 433, 456-457 (1976), regarding our decision in Suarez↩.