JAMES LE FAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Le Fay v. Commissioner
Docket No. 13291-78.
United States Tax Court
T.C. Memo 1982-420; 1982 Tax Ct. Memo LEXIS 330; 44 T.C.M. (CCH) 582; T.C.M. (RIA) 82420; July 26, 1982. *330 Held, since P did not appear at trial and offerred no evidence, the Commissioner's motion to dismiss for lack of prosecution is granted; therefore, P is liable for the deficiencies determined by the Commissioner and for an addition to tax under sec. 6654, I.R.C. 1954, for failure to pay estimated tax. Held, further, P is liable for additions to tax under sec. 6653(b), I.R.C. 1954, for fraud. Held, further, P is liable as a transferee to the extent of the assets received by him, plus interest. Sec. 6901, I.R.C. 1954. James Le Fay, pro se. John W. Dierker, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions to Tax
Sec. 6653(b)
Sec. 6654
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
1972
$7,263.35
$3,631.67
$232.42
1973
17,547.67
8,773.83
1974
12,854.74
6,427.37
The Commissioner also determined the following deficiencies in, and additions *332 to, the Federal income taxes of Southwestern C & L Oil & Gas, Inc. (Southwestern): Additions to Tax
Year
Deficiency
Sec. 6653 (b)
Sec. 6655
1973
$2,594.41
$1,297.21
1974
11,867.35
5,933.67
$247.30
He determined transferee liability against the petitioner with respect to such deficiencies and additions to the extent of the assets of such corporation received by him, $8,890.30, plus interest thereon. The issues for decision are whether the Commissioner has carried his burden of proving: (1) That any part of the underpayments of tax by the petitioner was due to fraud within the meaning of section 6653(b), and (2) that the petitioner is liable as a transferee of property of Southwestern. FINDINGS OF FACT The petitioner, James Le Fay, resided in Treasure Island, Fla., at the time he filed his petition in this case. During 1972, 1973, and 1974, the petitioner was married and was engaged in the retail sale of chinchillas through a sole proprietorship, Southwestern Chinchilla Co. During such years, he failed to maintain or to submit for examination by the Commissioner complete and adequate books of account and records for such business. The *333 records which he maintained during such years consisted of certain bank records. However, such records were incomplete, failed to disclose all receipts and disbursements, and did not properly reflect the correct taxable income of the petitioner. As a result, the Commissioner determined the taxable income of the petitioner for such years on the basis of the bank deposits method. During 1972, the petitioner maintained a checking account at the Garland Bank & Trust Company, Garland, Tex. (Garland Bank), and made deposits to such account in the total amount of $47,953.54. After adjustment for a nontaxable deposit of $160.00, the net amount of such deposits was $47,793.54. During 1972, the petitioner also maintained a checking account at the Citizens National Bank, Dallas, Tex. (Citizens Bank), and made deposits to such account in the total amount of $50,152.14. After adjustment for a nontaxable deposit in the amount of $480.00, the net amount of such deposits was $49,672.14. In addition, during 1972, he maintained a checking account at the First State Bank of Bellaire, Tex. (Bellaire Bank), and made deposits to such account in the net amount of $12,799.01. The petitioner denied *334 the existence of such account when an internal revenue agent questioned him about his bank accounts. During 1972, he withheld cash in the amount of $530.00 from deposits made to Bellaire Bank and $1,155.00 from deposits made to Citizens Bank. One-half of the net amount of all such deposits and cash withheld was taxable to the petitioner as his share of community income. Based on the records the petitioner submitted to the agent examining his returns and the bank records, the Commissioner determined that, for 1972, the petitioner incurred deductible business expenses in the amount of $64,925.10 and itemized deductions of $3,364.79, one-half of which was his community share of such expenses and deductions. Thus, the Commissioner determined the petitioner's community share of taxable income as follows: Net deposits
$55,132.35
Cash withheld from deposits
842.50
$55,974.85
Less: Business expenses
$32,462.55
Itemized deductions
1,682.39
Exemption
750.00
34,894.94
Taxable income
$21,079.91
Tax liability
$ 7,263.35
During 1973, the petitioner maintained a checking account at Garland Bank and made deposits in such account in the total *335 amount of $26,892.74; he maintained an account at Citizens Bank and made deposits to such account in the total amount of $59.75. During 1973, he also maintained a checking account at the Valley View Bank, Dallas, Tex. (Valley Bank), and made deposits to such account in the total amount of $127,286.34. After adjustment for a nontaxable deposit of $260.00, the net amount of such deposits was $127,026.34. During 1973, the petitioner withheld cash from deposits in the amount of $4,000.00, and he received constructive dividends from Southwestern in the amount of $2,729.29. Based on the records the petitioner submitted to the agent examining his returns and the bank records, the Commissioner determined that, for 1973, the petitioner and his wife incurred deductible business expenses in the amount of $106,304.90 and itemized deductions of $3,315.71 and that they were entitled to exemptions in the amount of $2,250.00. Thus, the Commissioner determined the taxable income of the petitioner and his wife as follows: Net deposits
$153,978.83
Cash withheld from deposits
4,000.00
Constructive dividend
(less $200 exclusion)
2,529.29
Wife's wages
609.84
$161,117.96
Less: Business expenses
$106,304.90
Itemized deductions
3,315.71
Exemptions
2,250.00
111,870.61
Taxable income
$ 49,247.35
Tax liability
$ 17,547.67
*336 During 1974, the petitioner maintained a checking account at Valley Bank and made deposits to such account in the total amount of $111,081.60. He withheld cash from such deposits in the amount of $120.00. After adjustment for nontaxable deposits in the amount of $10,100.00, the net amount of such deposits was $100,981.60. Also, during 1974, the petitioner received constructive dividends from Southwestern in the amount of $47,737.31. Based on the records the petitioner submitted to the agent examining his returns, the bank records, and the schedule C of the joint return filed by the petitioner and his wife, the Commissioner determined that, for 1974, $12,221.28 of such constructive dividends was used to pay deductible business expenses of Southwestern Chinchilla Co., that the petitioner incurred other deductible business expenses in the amount of $86,825.00, that the petitioner and his wife incurred itemized deductions of $5,682.65, and that they were entitled to exemptions in the amount of $2,250.00. Thus, the Commissioner determined the taxable income of the petitioner and his wife as follows: Net deposits
$100,981.60
Cash withheld from deposits
120.00
Constructive dividend
(less $200 exclusion)
47,537.31
$148,638.91
Less: Business expenses
$ 99,046.28
Itemized deductions
5,682.65
Exemptions
2,250.00
106,978.93
Taxable income
$ 41,659.98
Tax liability
$ 12,854.74
*337 During 1972, 1973, and 1974, neither the petitioner nor his wife received any gifts, bequests, inheritances, legacies, or devises; nor did they receive any nontaxable or excludable income, receipts, cash, or other assets other than the items taken into account by the Commissioner. The petitioner did not file a return for 1972. Instead, he and his wife filed a Form 1040A which disclosed only their names and address and his social security number and upon which they claimed two exemptions. Attached to such document was the following statement which was signed by the petitioner: "Records for 1972 are not completely available due to theft and destruction." For 1972, the petitioner failed to report taxable income in the amount of $21,079.91. The petitioner and his wife filed joint returns for 1973 and 1974. Attached to the 1973 return was the following statement which was signed by the petitioner: "Records for 1973 are not completely available due to theft and desturction [sic]." Attached to the 1974 return was the following statement signed by the petitioner: "Records for 1974 are not completely available due to theft and destruction. * * * These Figures were taken from monthly *338 sales and expense books. These books have since disappeared." Both the 1973 and 1974 returns, and the form he used for 1972, were filed in September 1975, after the Commissioner had commenced his investigation of the petitioner. On the 1973 return, the petitioner and his wife reported gross income of $609.84, the wages of his wife which had been reported on a Form W-2, and requested a refund of $79.44, the amount of Federal income tax withheld from such wages. On such return, they omitted taxable income of $49,247.35. On the 1974 return, they claimed a loss of $2,389.00 and failed to report taxable income of $39,270.98. In a notice of deficiency sent to the petitioner for 1972, the Commissioner determined that he was liable for a deficiency for the amount of the tax liability computed by the Commissioner and that the petitioner was liable for the addition to tax under section 6653(b) for fraud and the addition to tax under section 6654 for failure to pay estimated tax. In a notice of deficiency sent to the petitioner and his wife for 1973 and 1974, the Commissioner determined that they were liable for deficiencies in tax in accordance with his computation of their tax liability *339 for those years and that they were liable for the addition to tax under section 6653(b) for fraud. The petitioner's wife has not commenced an action in this Court with respect to such notice. Southwestern was engaged in the oil business. At the beginning of 1975, its assets consisted of checking accounts at the Dallas International Bank (Dallas Bank), Valley Bank, and Citizens Bank. Between January and March 1975, the petitioner, as an authorized official of Southwestern, wrote checks on such accounts totaling $8,890.30. Such checks were payable to cash, to the petitioner, to his wife, and to Southwestern Chinchilla Co. In November 1975, the account at Dallas Bank was closed. After the payment of such checks, Southwestern had no assets other than a balance of a few cents in its checking accounts. In a notice of liability sent to the petitioner in August 1978, the Commissioner determined that such checks represented transfers of the assets of Southwestern to the petitioner and that he was liable as a transferee to the extent of such transfers, plus interest, for the deficiencies and additions to tax which he had determined were due from Southwestern. The Commissioner determined *340 that Southwestern owed deficiencies in income tax for 1973 and 1974, was liable for the addition to tax for fraud for each of such years, and was liable for the addition to tax under section 6655 for failure to pay estimated tax for 1974. OPINION At trial, no appearance was made by or on behalf of the petitioner, and counsel for the Commissioner moved pursuant to Rule 123(b), Tax Court Rules of Practice and Procedure, [2] to dismiss this case for lack of prosecution as to the deficiencies in income taxes and the addition to tax under section 6654. Rule 123(b) provides: (b) Dismissal: For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which he has the burden of proof; and such decision shall be treated as a dismissal for purposes of *341 paragraphs (c) and (d) of this Rule. The petitioner has the burden of disproving the Commissioner's determination of deficiencies in income taxes. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Likewise, the petitioner has the burden of proving that the Commissioner's determination of an addition to tax under section 6654 was erroneous. Ruben v. Commissioner,33 T.C. 1071 (1960); O'Donohue v. Commissioner,33 T.C. 698 (1960). Since the petitioner did not appear at trial and offered no evidence, it is clear that we can and should enter an order dismissing his case for lack of prosecution with respect to the deficiencies in income taxes and addition to tax under section 6654. Freedson v. Commissioner,565 F. 2d 954 (5th Cir. 1978), affg. 67 T.C. 931 (1977). [3]
The first issue for decision is whether to sustain the Commissioner's determination of fraud for each of the years in issue. *342 The Commissioner has the burden of proving fraud by clear and convincing evidence. Rule 142(b); sec. 7454(a); Miller v. Commissioner,51 T.C. 915, 918 (1969). In order to prove fraud, the Commissioner must show that the petitioner intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F. 2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 112-113 (1956). The presence or absence of fraud is a factual question to be determined by an examination of the entire record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Since fraud can seldom be established by direct proof of intention, the petitioner's entire course of conduct can often be relied on to establish circumstantially such fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); *343 Otsuki v. Commissioner,supra at 105-106. The petitioner's failure to come forward with any evidence to dispute the Commissioner's determination of deficiencies for the years in issue is not determinative of fraud, for a mere understatement of income does not establish fraud. Carter v. Campbell,264 F. 2d 930, 936 (5th Cir. 1959). However, a consistent pattern of under-reporting of substantial amounts of income over a period of years is, standing alone, persuasive evidence of fraud. Holland v. United States,348 U.S. 121, 139 (1954); Lollis v. Commissioner,595 F. 2d 1189, 1191 (9th Cir. 1979), affg. a Memorandum Opinion of this Court; United States v. Burrell,505 F. 2d 904, 911-912 (5th Cir. 1974); Estate of Upshaw v. Commissioner,416 F. 2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Cefalu v. Commissioner,276 F. 2d 122, 129 (5th Cir. 1960), affg. a Memorandum Opinion of this Court; Stone v. Commissioner,56 T.C. at 224; Otsuki v. Commissioner,53 T.C. at 107. Also, a taxpayer's failure *344 to maintain accurate books and records may also constitute significant evidence of fraud. Lollis v. Commissioner,595 F. 2d at 1192; Estate of Upshaw v. Commissioner,416 F. 2d at 741; Cefalu v. Commissioner,276 F. 2d at 129; Otsuki v. Commissioner,53 T.C. at 110. We are satisfied that the Commissioner has carried his burden of proving fraud by clear and convincing evidence for each of the years at issue. The petitioner's books and records were insufficient to disclose his income, and accordingly, the Commissioner computed such income by use of the bank deposits method. The use of such method is an acceptable method of establishing income under such circumstances. Gromacki v. Commissioner,361 F. 2d 727 (7th Cir. 1966), affg. a Memorandum Opinion of this Court; Goe v. Commissioner,198 F. 2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court; Halle v. Commissioner,175 F. 2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Mauch v. Commissioner,113 F. 2d 555 (3d Cir. 1940), *345 affg. 35 B.T.A. 617 (1937); Harper v. Commissioner,54 T.C. 1121 (1970). The revenue agent testified and explained how he computed the petitioner's income, and we have no basis for questioning his analysis. He provided the petitioner an opportunity to show that any additional deposits represented nontaxable income or that he was entitled to any additional deductions, but the petitioner failed to furnish any information showing that he was entitled to any such adjustments. We recognize that the Commissioner cannot carry his burden of proving fraud merely by relying on the petitioner's failure to disprove his determination. See Estate of Beck v. Commissioner,56 T.C. 297, 363 (1971); Otsuki v. Commissioner,53 T.C. at 106. However, here, the Commissioner has produced convincing evidence to support his determination, and accordingly, we have found that the petitioner received the amounts of unreported taxable income computed by the Commissioner. Such amounts of unreported taxable income are substantial and reflect a pattern *346 of the consistent failure to report large amounts of income. Such evidence is a very persuasive indication of fraud. Holland v. United States,348 U.S. at 139; Lollis v. Commissioner,595 F. 2d at 1191; Adler v. Commissioner,422 F. 2d 63, 66 (6th Cir. 1970), affg. a Memorandum Opinion of this Court; Estate of Upshaw v. Commissioner,416 F. 2d at 741; Cefalu v. Commissioner,276 F. 2d at 129; Stone v. Commissioner,56 T.C. at 224; Otsuki v. Commissioner,53 T.C. at 107-108. Furthermore, the petitioner filed no returns for the years at issue until the Internal Revenue Service had commenced its investigation of him. The returns filed by him were grossly inaccurate, and his excuse for the delay and inaccuracy was not convincing--the revenue agent could find sufficient records to compute the petitioner's income. In addition, the petitioner's denial of the existence of an account at Bellaire Bank constitutes further evidence of his attempts to conceal his income and *347 mislead the Commissioner. Such conduct is another important indicium of fraud. United States v. Newman,468 F. 2d 791, 794 (5th Cir. 1972); Powell v. Granquist,252 F. 2d 56, 60-61 (9th Cir. 1958); Estate of Beck v. Commissioner,56 T.C. at 365; Stone v. Commissioner,56 T.C. at 224; Beaver v. Commissioner,55 T.C. 85, 93 (1970). In summary, the evidence is overwhelming that for each of the years in issue the petitioner attempted to evade taxes which he knew or believed that he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Therefore, we sustain the Commissioner's imposition of an addition to tax for fraud under section 6653(b) for each of the years in issue. The next issue for decision is whether the petitioner is liable as a transferee under section 6901 for the unpaid deficiencies in and addition to the income taxes of Southwestern for 1973 and 1974. The Commissioner contends that the petitioner is so liable to the extent of the checks written on such corporation's accounts, $8,890.30, plus interest. *348 The Commissioner has the burden of proving that the petitioner is liable as a transferee, and the petitioner has the burden of proving that Southwestern is not liable for the deficiencies in income taxes and addition to tax under section 6655 determined by the Commissioner. Rule 142(c); sec. 6902(a). Since the petitioner did not appear at trial and did not introduce any evidence, it is clear that he has not met his burden as to the deficiencies in income taxes and addition to tax under section 6655. Rule 142(a). Since the deficiencies and addition to tax under section 6655 exceed the assets which the Commissioner claims were transferred to the petitioner, the Commissioner has made no attempt to prove that Southwestern is liable for the addition to tax under section 6653(b); he presented evidence merely to establish the petitioner's liability as a transferee. To meet his burden of proof, the Commissioner must show that there was a transfer of assets from Southwestern to the petitioner, that such transfer was made for inadequate consideration, *349 that Southwestern was insolvent at the time of the transfer or became insolvent as a result of the transfer, and the value of the assets transferred. Holmes v. Commissioner,47 T.C. 622, 626 (1967); Moran v. Commissioner,45 T.C. 528, 529-530 (1966). Although the record before us is meager, it clearly establishes that the Commissioner has met his burden of proof. Between January and March 1975, the petitioner issued checks to or for his benefit on Southwestern's checking accounts which, except for a few cents, exhausted such accounts. Such accounts were Southwestern's sole assets at that time. Such checks show that all the assets of Southwestern were in effect transferred to the petitioner, and the records contain no indication that Southwestern received any consideration for such transfers. Also, from the fact that Southwestern had no remaining assets, we can infer that the corporation received no consideration for such transfers. In determining whether Southwestern was insolvent or was made insolvent by such transfers, its liability for Federal *350 income taxes, plus interest and additions, even if unknown at the time of the transfer, must be taken into account. Holmes v. Commissioner,supra;Leach v. Commissioner,21 T.C. 70, 75 (1953). Thus, even if there were no other creditors, Southwestern's income tax liability exceeded its assets at the time of such transfers, and therefore, it was insolvent. Finally, since all such transfers were made by check, there is no question as to the value of the assets received by the petitioner. Accordingly, we find and hold that the petitioner is liable as a transferee to the extent of the assets received by him, plus interest. However, such liability is limited to the deficiencies in income taxes and addition to tax under section 6655, as determined by the Commissioner. An order will be entered granting the Commissioner's motion to dismiss, and a decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. All references to a Rule are to the Tax Court Rules of Practice and Procedure.↩
3. See Gaar v. Commissioner,T.C. Memo. 1981-696↩, on appeal (5th Cir., March 29, 1982).