416 F.2d 737
 69-2 USTC P 9637
 ESTATE of Hutchen UPSHAW, Deceased, Ardenia Upshaw,
Administratrix, and Ardenia Upshaw, Individually,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
ESTATE of Hutchen UPSHAW, Deceased, Ardenia Upshaw,
Administratrix,Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 17258, 17259.
 United States Court of Appeals Seventh Circuit.
 Sept. 23, 1969.
 
 1
 Jack C. Brown, Indianapolis, Ind., F. Laurence Anderson, Jr., Gary, Ind., for appellants.
 
 
 2
 Mitchell Rogovin, Asst. Atty. Gen., Richard M. Roberts, Acting Asst. Atty. Gen., Tax Division, Stephen H. Hutzelman, Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, Washington, D.C., for appellee.
 
 
 3
 Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and BEAMER, District Judge.[1]
 
 BEAMER, District Judge
 
 4
 Hutchen Upshaw (Hutchen) and Ardenia Upshaw (Ardenia) were husband and wife residing in Gary, Indiana. For the years 1953 and 1958 they filed joint income tax returns as husband and wife. For the years 1954 through 1957, Hutchen filed individual returns in which Ardenia did not join. On May 3, 1961, the Commissioner of Internal Revenue (Commissioner) assessed deficiencies and under date of June 30, 1961, he notified appellants of the assessment of deficiencies in their reported income for each year 1953 through 1958, together with a computation of tax, penalties and interest on the adjusted gross income as found by the Commissioner.
 
 
 5
 On September 27, 1961, Hutchen and Ardenia filed their petition with the Tax Court asking for a redetermination of the deficiencies set forth in the Commissioner's notice for the years 1953 and 1958 for which they filed joint returns. On the same date, Hutchen filed a similar petition with the Tax Court covering the years 1954 through 1957, the years for which he had filed individual returns.
 
 
 6
 During the pendency of the cases in the Tax Court Hutchen died and Ardenia was appointed administratrix of his estate and was substituted for him in the Tax Court proceedings.
 
 
 7
 The two actions in the Tax Court were consolidated for trial and opinion. After trial, the Tax Court issued its opinion upholding the deficiency determinations made by the Commissioner. From this decision the appellants appeal. We affirm.
 
 
 8
 In the Tax Court proceedings, the parties stipulated that the understatement of adjusted gross income in appellants' tax returns, subject to one exception, were as follows:
 
 
 9
 Amount of
Year Understatement
---------- --------------
1953* $ 19,613.13
1954 37,964.31
1955 99,691.94
1956 111,702.15
1957 159,915.18
1958* 173,184.59
 
 
 10
 The taxpayers, whose taxable income was computed by the Commissioner on the net worth basis, took exception to the amount of understatement of income listed above on the grounds that the Commissioner improperly failed to include accrued tax liabilities in computing the net worth of the taxpayers for the various years.
 
 
 11
 The result of the jeopardy assessments made by the Commissioner and affirmed by the Tax Court are as follows:
 
 
 12
 Year Tax Additions to Tax Interest
------ -----------------------------------------
1953 * $ 36,140.16 $ 30,404.38 $15,466.50
1954 67,031.71 39,898.62 24,329.76
1955 146,803.38 73,511.05 44,475.40
1956 179,965.15 89,982.58 43,724.14
1957 232,897.58 116,448.79 42,610.74
1958 * 257,500.39 128,750.20 31,661.96
 
 
 13
 Note FN* Joint returns.
 
 
 14
 The contentions of appellants raised on appeal are that, (1) The Commissioner did not sustain his burden of proving that Hutchen Upshaw was guilty of fraud with intent to evade taxes for the years 1953 through 1958 and that at least part of the underpayment each year was due to such fraud, (2) Ardenia should not be charged with the additional tax, penalties, and interest assessed by the Commissioner for the years 1953 and 1958, (3) the statute of limitations bars recovery of the tax and additions to tax assessed by the Commissioner for the years 1953 and 1958 and (4) that the Commissioner erred in failing to subtract the accrued liability for each year in question in computing taxpayers' net worth.
 
 The Facts
 
 15
 In the Tax Court the parties filed a stipulation of facts, which insofar as it is pertinent to the issues here, is summarized as follows.
 
 
 16
 Hutchen Upshaw was born in Alabama in 1910. At age 9 he moved to Indiana Harbor, Indiana, where he attended school through the 10th grade. At age 16, he left school and went to work in foundries and at odd jobs. In 1940 he was adjudged a bankrupt and in September, 1944, all his available assets, in the amount of $30.00, were distributed. While working as a welder in a local industry, he was active as a policy agent (gambler) until 1950. During the ensuing 15 months he worked exclusively as a policy agent. In November, 1951, he became active as a principal in a gambling enterprise called the Lucky Strike Policy Wheel. In August of 1953, he bought a tavern in Gary, Indiana, and from that time through 1958, his gambling activities were conducted from the rear room and basement of the tavern.
 
 
 17
 Hutchen and Ardenia were married for more than 19 years. Ardenia filed joint income tax returns with Hutchen for the years 1953 and 1958. She had a Bachelor's Degree in Education from Indiana University and taught school in Gary in the 1954-1955 scholl year, receiving salary of $1,372.37 in 1954 and $3,120.17 in 1955. She filed separate tax returns in 1954, 1955, and 1957. None of the assets contained in the Commissioner's net worth statement were acquired with money earned by her.
 
 
 18
 During the years 1953-1958 Hutchen engaged in various income-producing activities, consisting of operating policy and lottery, bookmaking, money lending, renting property, buying and selling stocks and other securities and operating a tavern. He was arrested 11 times and convicted once between 1949 and 1959 on various charges related to his gambling activities. He filed income tax returns for the years in question showing adjusted income as follows: 1953*-$5,000, 1954-$10,050, 1955-$17,428.60, 1956-$27,700, 1957-$33,083.99, and 1958*-$74,983.59. (*Joint returns with Ardenia.)
 
 
 19
 Subject to the exceptions noted herein, the understatement of adjusted gross income found by the Commissioner for the various years involved, as listed above, is correct.
 
 
 20
 In addition to the stipulation, the Tax Court made findings as to other facts based on the evidence.
 
 
 21
 During the years at issue, Hutchen failed to maintain adequate books. One of the reasons he failed to do so was to prevent use of any records of his gambling activity as evidence against him if seized by state authorities. In his policy activities he dealt in cash. The appellants received no inheritance, gifts, or other nontaxable income.
 
 
 22
 Hutchen attended an interview with an Internal Revenue Service agent on December 1, 1968, to discuss his tax problems for 1953 through 1958. He answered all questions. He identified seven pieces of real estate owned by him. As of December 31, 1968, he actually owned no less that 16 separate parcels of real estate. He was asked the cost of remodeling his property at 1700 Massachusetts Street in Gary, to which he replied he thought it was between $13,000 and $15,000. He had purchased the property in June of 1956 and from that date until December 31, 1968, he had expended $124,935.45 in capital improvements on the building.
 
 
 23
 When Hutchen was asked to identify automobiles he owned, he listed only a 1958 Mercury. During 1958 he also owned a 1958 Lincoln Continental, purchased in 1957.
 
 
 24
 The evidence also showed that he acquired real estate and automobiles during the years in issue valued at approximately $29,000 in the name of his mother-inlaw, an employee, a brother and in his wife's maiden name.
 
 
 25
 In 1961, Hutchen was indicted by a Federal Grand Jury for unlawfully and knowingly attempting to evade a large part of his federal income tax for the years 1955, 1956, 1957 and 1958. He entered a plea of guilty to the 1958 charge and was sentenced to 5 years in prison and fined $10,000. The charges pertaining to the other years were then dismissed.
 
 The Fraud Issue
 
 26
 Section 293(b) of the 1939 Internal Revenue Code, and section 6653(b) of the 1954 Code provide for the assessment of a penalty of 50% Of the total amount of the deficiency if any of the deficiency is due to fraud with intent to evade tax. The presumption of correctness attaching to the Commissioner's determination of a deficiency does not attach to a determination of fraud. The Fraud of a given taxpayer is a matter of fact which the Commissioner must establish through clear and convincing proof. Steiner v. Commissioner of Internal Revenue, 350 F.2d 217 (C.A.7, 1965). In an action before the Tax Court, it, as the original trier of fact, must examine the entire record to decide if the Commissioner established fraud. Teitelbaum v. Commissioner of Internal Revenue, 294 F.2d 541, 547 (C.A.7, 1961) cert. denied 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962).
 
 
 27
 Because the question of fraud is an issue of fact, the Tax Court's findings settle the matter unless they are clearly erroneous. Helvering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751 (1940), Mensik v. Commissioner of Internal Revenue, 328 F.2d 147, 150 (C.A. 7, 1964) cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964).
 
 
 28
 Some of the factors the Tax Court may take into consideration in determining whether the taxpayer was guilty of fraud with intent to evade taxes are: persistent understatement of income over a period of years, failure to keep adequate records and books, misstatement of facts to a revenue agent and concealing ownership of property. All of these factors are present here.
 
 
 29
 According to the stipulation filed in the Tax Court, the appellants understated their adjusted gross income 3.4 times for 1958 and 4.9 times for 1953. Hutchen understated his adjusted gross income 4.8 times for 1954, 6.7 times for 1955, 5 times for 1956 and 5.8 times for 1957. For example, the adjusted gross income reported for 1958 was $74,983.59. The correct adjusted gross income was $254,038.18, resulting in an understatement by the taxpayers of $173,184.59, making the ratio of corrected to reported gross income 3.4. This was the smallest ratio for any of the years involved.
 
 
 30
 While a mere understatement of income does not conclusively establish fraud, a consistent pattern of understatement of substantial amounts of income over a period of years is not a mere understatement and is persuasive evidence of a fraudulent intent to evade taxes. Holland v. United States,348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954). In Kramer v. Commissioner of Internal Revenue, 389 F.2d 236 (C.A.7, 1968), this Court held that this factor alone was sufficient to sustain a finding of fraud with intent to evade taxes.
 
 
 31
 In addition, the evidence here shows that Hutchen failed to keep adequate books and records as required by section 6001 of the Code and Treasury Regulations section 1.6001-1(a) which applied to all years except 1953. Section 54(a) of the 1939 Code imposed a similar requirement with respect to 1953 taxes. The failure to keep such adquate records is a strong indicium of fraud with intent to evade taxes. Bryan v. Commissioner of Internal Revenue, 209 F.2d 822 (C.A.5, 1954).
 
 
 32
 The evidence shows that Hutchen also made material misstatements of facts concerning the ownership of property and of the cost of remodeling buildings to a revenue agent. This is also an indicium of fraud with intent to evade taxes. Gromacki v. Commissioner of Internal Revenue, 361 F.2d 727 (C.A.7, 1966.)
 
 
 33
 Hutchen also concealed his ownership of property by holding title in the names of relatives and employees. This is evidence of fraud with intent to evade taxes. Furnish v. Commissioner of Internal Revenue, 262 F.2d 727, 729 (C.A.9, 1958).
 
 
 34
 Finally, with respect to his 1958 taxes, Hutchen pled guilty to a criminal charge of wilfully and knowingly attempting to evade taxes. This constitutes an admission of fraud, which is competent evidence in a civil proceeding. Logan Square Auto Mart v. Commissioner of Internal Revenue, 291 F.2d 136, 140 (C.A.7, 1961).
 
 
 35
 On the basis of the record, we conclude that there was ample evidence to sustain the Tax Court's finding of fraud with intent to evade the payment of taxes for each of the years involved.
 
 
 36
 Ardenia's Liability for the Additional Tax and Additions to Tax for the Years 1953 and 1958
 
 
 37
 Ardenia contends that she should not be liable for the aditional tax, fraud penalties and interest for the years 1953 and 1958 because she was an innocent wife who did not participate in any fraudulent intent to evade taxes, had no income of her own for those years, and did not file joint returns with her husband. Moreover, she contends that the effect of the Tax Court's decision is to deprive her of property without due process of law in violation of the 5th Amendment to the Constitution of the United States.
 
 
 38
 These issues are raised here for the first time and were not presented to the Tax Court for determination. Under the familiar rule, we need not decide the merits of claims or issues which the Tax Court had no opportunity to decide. Kelly v. Commissioner of Internal Revenue, 228 F.2d 512, 516 (C.A.7, 1956). We have, however, considered Ardenia's contentions and find them groundless. This is especially true in view of the fact that the joint petition of the Upshaws filed in the Tax Court alleges that the 1953 and 1958 returns were joint returns and the stipulation of fact entered into by all parties also says that these returns were joint. Ardenia was a party to the Tax Court proceedings and had full opportunity to litigate the question of joint returns and her husband's fraudulent intent to evade taxes. She stipulated that the 1953 and 1958 returns were joint, and the question of her husband's fraud was fully litigated. Therefore, her 5th Amendment rights to due process were fully accorded her.
 
 
 39
 Section 51(b) of the 1939 Code and 6013(d)(3) of the 1954 Code provide that if a joint return is made, the liability with respect to tax shall be joint and several. The courts have uniformly held that the wife is liable for all additional taxes, including penalties for fraud, when she joins in the filing of a joint return, regardless of lack of knowledge or fraudulent intent on her part. Prokop v. Commissioner of Internal Revenue, 254 F.2d 544 (C.A.7, 1958); Horn v. Commissioner of Internal Revenue, 387 F.2d 621 (C.A.5, 1967); Moore v. United States, 360 F.2d 353, 357 (C.A.4, 1965), cert. denied 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967); Ginsberg's Estate v. Commissioner of Internal Revenue, 271 F.2d 511 (C.A.5, 1959); Furnish v. Commissioner of Internal Revenue, 262 F.2d 727 (C.A.9, 1958); Kann v. Commissioner of Internal Revenue, 210 F.2d 247, 252 (C.A.3, 1953), cert. denied 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954) and Howell v. Commissioner of Internal Revenue, 175 F.2d 240 (C.A.6, 1949).
 
 The Statute of Limitations
 
 40
 Ardenia contends that the tax returns for 1953 and 1958 were not joint returns, therefore the 3-year statute of limitation imposed by Section 6501(a) of the 1954 Code had run as to her.
 
 
 41
 As noted above, she stipulated in the Tax Court that the 1953 and 1958 returns were joint returns. She offered no evidence in the Tax Court to the contrary. The 1953 return bears her signature and the appellants took advantage of all the benefits derived from filing a joint return. There is no contention that her signature was obtained by fraud, mistake or duress. The 1958 return filed on July 15, 1959, was signed for both taxpayers by a Certified Public Accountant under separate powers of attorney executed by Hutchen and Ardenia which the Commissioner found acceptable. Again, the appellants took advantage of all the benefits incident to a joint return. There is no evidence that the power of attorney executed by Ardenia was repudiated. She contends only that it was not on the form prescribed by the Internal Revenue Service and it did not expressly authorize the accountant to execute the tax return on her behalf. However, if she intended to file a joint return, it may be found to be such even though she did not sign it or expressly authorize it to be signed for her. Heim v. Commissioner of Internal Revenue, 251 F.2d 44 (C.A.8, 1958); Kann v. Commissioner of Internal Revenue, 210 F.2d 247 (C.A.3, 1953) cert. denied 347 U.S. 967, 74 S.Ct. 778 (1954). There is no evidence that Ardenia did not intend to file a joint return for 1958. To the contrary, her petition and stipulation in the Tax Court are conclusive evidence that she did intend to file a joint return.
 
 
 42
 The 1958 return was filed July 15, 1959. The jeopardy assessment was made on May 3, 1961, with notice on June 30, 1961, well within the statutory period.
 
 
 43
 Under section 276(a) of the 1939 Code and section 6501(c)(1) of the 1954 Code, the tax may be assessed at any time where the taxpayer made a false or fraudulent return to evade taxes. As we have pointed out above, there was ample evidence to sustain the Tax Court's finding that there was fraudulent intent to evade taxes in 1953. Therefore, there was no bar to the assessment for 1953. United States v. England, 376 F.2d 381 (C.A.7, 1967).
 
 
 44
 Failure to Subtract Accrued Federal Income Tax Liability in Arriving at Taxpayers' Net Worth
 
 
 45
 Appellants contend that the Tax Court erred in accepting the Commissioner's net worth statement for each year involved without first deducting the accrued federal tax liability. In other words, they contend that the opening and closing net worth statement should include the accrued income tax liability at each point in time.
 
 
 46
 As a matter of good non-tax accounting practices, they are correct. A net worth statement which does not reflect all liabilities does not accurately reflect a person's financial status. The purpose of the opening and closing net worth statements in a case such as this, however, is not to accurately reflect a person's total financial status, but is one step in computing the person's taxable income.
 
 
 47
 The net worth method of computing taxable income involves establishing the difference between a person's net worth at the beginning and end of the taxable period; adding thereto all non-deductible expenditures made during the year; and then subtracting all non-taxable income-- such as gifts. If the income tax accrued on unreported income from prior years is subtracted from the opening net worth statement, it must also be subtracted from the closing net worth statement; the change in net worth will remain the same. Obviously this would involve no more than additional computation without effect on the ultimate result-- taxable income.
 
 
 48
 On the other hand, if the unpaid tax on unreported income which accrues during the year is subtracted on the closing net worth statement, there would be a sizeable reduction in the colsing net worth and an equivalent reduction of taxable income for the year. This deduction is both impossible and impermissible. It is impossible because the amount of accrued and unpaid tax cannot be determined until such time as the taxable income is determined and this will not be fixed until the closing net worth is established. The deduction is impermissible because it would defeat the purpose of the net worth method of computing tax liability-- which is to reconstruct the taxpayer's taxable income.
 
 
 49
 Expenditures for income tax are not tax deductible. All taxpayers are required to report that portion of their income which they use to pay the tax. If the accrued and unpaid tax is deducted from the closing net worth statement in such a manner as to reduce the delinquent taxpayer's reported income by the amount of the tax, it would give such a taxpayer an illegal deduction not granted to those filing proper returns and keeping proper records.
 
 
 50
 We hold, therefore, that the Tax Court did not err in accepting the Commissioner's computation of the taxpayers' net worth. Romm v. Commissioner of Internal Revenue, 255 F.2d 698 (C.A.4, 1958), cert. denied, 358 U.S. 833, 79 S.Ct. 54, 3 L.Ed.2d 70 (1958); Schultz v. Commissioner of Internal Revenue, 278 F.2d 927, 931-33 (C.A.5, 1960).
 
 
 51
 Finally, we find no merit in appellants' contention that the Tax Court erred in not determining whether the rule of collateral estoppel applied to Ardenia for the additional tax and penalties assessed for 1958 because of Hutchen's conviction for tax fraud for that year. Since, as we have shown, there was ample evidence of fraud with intent to evade taxes, independent of the criminal conviction, she would be no better off if that issue was decided in her favor.
 
 
 52
 For the reasons stated herein, the decision of the Tax Court is
 
 
 53
 Affirmed.
 
 
 
 [1]
 Judge Beamer is sitting by designation from the Northern District of Indiana