JOHN L. KNESS AND MARY KNESS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kness v. Commissioner
Docket No. 24167-84.
United States Tax Court
T.C. Memo 1986-157; 1986 Tax Ct. Memo LEXIS 446; 51 T.C.M. (CCH) 881; T.C.M. (RIA) 86157; April 21, 1986. Richard D. Clark, for the petitioners. Allan E. Lang, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: During the course of the examination of their Federal income tax returns for 1978 and 1979, petitioners paid certain deficiencies in income tax. Subsequently, respondent determined that petitioners are liable for the following additions to tax: Addition to Tax
Sec. 6653(b),
Sec. 6653(a),
Year
I.R.C. 1954
I.R.C. 1954
1978
$ 9,260
1979
$31,333
1980
$552
Petitioners concede that they are liable for the section 6653(a) [1] addition *447 to tax for 1980. The only issue for decision is whether they are liable for the section 6653(b) additions to tax and that depends on whether any part of their underpayments of tax for 1978 and 1979 was due to fraud within the meaning of section 6653(b). FINDINGS OF FACT At the time they filed their petition, petitioners were legal residents of Loveland, Colorado. They filed joint Federal income tax returns for 1978 and 1979 with the Internal Revenue Service Center, Ogden, Utah. During 1978 and 1979 and for a number of years previously, petitioners were engaged in the business of farming and cattle feeding. To finance their business, they maintained a line of credit with Mountain Plains Production Credit Association (hereinafter PCA). In making cattle purchases they drew on their PCA account, and the net proceeds of all of their cattle sales were credited directly on that account. All of the cattle purchases and sales material to this case (including the ones relevant to the fraud issue) are reflected as disbursements and repayments on PCA ledger statements. Petitioners' *448 cattle purchases during 1978 and 1979 were made through Farmers Cattle Company and their sales were made through Farmers Livestock Commission Company. Shortly after cattle were purchased, petitioners received a purchase invoice from Farmers Cattle Company reflecting the purchase. After cattle were sold, petitioners received a sales statement from Farmers Livestock Commission Company. The proceeds of sales were turned over to PCA, and it sent petitioners a statement reflecting the application of the receipts to petitioners' loan account. Petitioners' record of their farming and cattle-feeding operations for 1978 and 1979 was maintained in a Farm Book based on a simplified single entry bookkeeping system. Petitioner Mary Kness (hereinafter Mrs. Kness) was responsible for posting entries in the Farm Book and keeping other records of the farming the cattle-feeding operations. Under the method of bookkeeping used by petitioners, cattle sales reflected on the sales statements received from Farmers Livestock Commission Company were posted to the "Cattle Sales" page under the sales column in petitioners' Farm Book. Invoices for petitioners' cattle purchases from the Farmers Cattle *449 Company were accumulated and, when the cattle were sold, were posted to the "Cattle Sales" page under the cost column in the Farm Book. Receipts mailed or given to petitioners by PCA covering the proceeds of cattle sales were posted to "Loan Repayments" in petitioners' Farm Book. The parties stipulated that, on or about the following dates during 1978 and 1979, petitioners made the following cattle sales: 1978
Date
Head of Cattle Sold
Amount
1/ 4/78
240
[1] $126,021.12
5/ 4/78
199
126,781.72
5/11/78
299
183,343.05
6/23/78
199
145,251.98
8/ 3/78
155
98,972.69
10/23/78
1
180.48
1,093
[2] $680,550.95
1979
Date
Head of Cattle Sold
Amount
3/26/79
219
$144,330.19
3/28/79
327
228,761.88
4/19/79
205
169,624.00
4/26/79
142
[1] 104,519.00
5/14/79
2
1,526.25
895
$648,761.32
During 1978 and 1979, petitioners sold cattle through the Farmers Livestock Commission Company in the respective amounts of $126,021 and $104,519, which were *450 not reported on their income tax returns for those years. Also, on the returns for those years, petitioners understated their cost of cattle sold in the respective amounts of $86,504 and $590. On January 3, 1978, petitioners sold 240 head of cattle for $126,021.12. In accordance with customary practice, within a few days after the January 3, 1978 sale, petitioners would have entered the sale in the Farm Book on the "Cattle Sales" page and the corresponding loan repayment to PCA on the "Loan Repayments" page. On line 1 of the "Cattle Sales" page for 1978 an entry was made for the "1-3" date, but the entry was erased prior to the preparation of petitioners' 1978 return. As a result of the erasure, the "Cattle Sales" page for 1978 contains no entry for the January 3, 1978 sale of 240 head of cattle. An entry was made on the "Loan Repayments" page for 1978 reflecting the loan repayment of $126,021.12 to PCA derived from the January 3, 1978, sale of 240 head of cattle. Petitioners sold 142 head of cattle on April 26, 1979. The "Cattle Sales" page for 1979 in petitioners' Farm Book contains no entry for the sale of these cattle for which petitioners received a net amount of $104,519. *451 The "Loan Repayments" page for 1979 in petitioners' Farm Book, however, reflects a loan repayment to PCA on April 26, 1979, in the amount of $111,118.78, which is the amount derived from the sale of the 142 head of cattle for $104,518.78 and a water payment of $6,600. Mr. Kness took petitioners' Farm Book to Howard Ray (Ray), a certified public accountant, and engaged him to prepare petitioners' 1978 and 1979 income tax returns. Ray provided no bookkeeping services and asked for no verification of the figures in the Farm Book. Ray picked up the yearend balances of the cattle sales column and the cost column and entered them in the appropriate blanks on the 1978 and 1979 income tax return forms. He did not review other portions of the Farm Book, such as the loan repayment account, to verify the accuracy of these balances. Petitioners' 1979 income tax return was selected for audit as a random selection under the Internal Revenue Service Taxpayer Compliance Measurement program. Revenue Agent Jesse Rodriguez (Rodriguez) met with Mr. and Mrs. Kness on February 20, 1981, in the offices of Howard Ray and received some records. Rodriguez discovered from those records what appeared *452 to be a substantial omission of 1979 income. He held a second meeting with Ray on July 6, 1981, and informed him that he had expanded the examination to cover 1978 and 1980. At this meeting Ray provided Rodriguez with a complete copy of petitioners' Farm Book. Petitioners did not attend the meeting. On July 14, 1981, Rodriguez met with Mr. Kness at the Internal Revenue Service offices. He submitted to Rodriguez the original Farm Book and presented a stack of checks which, he stated, covered feed expenses for which petitioners had not received credit on their returns. Rodriguez observed that the amounts of four of the checks submitted by Mr. Kness had been altered as follows: Check No.
Original Amount
Amount as Altered
323
$ 502.86
$ 1,502.86
195
$ 389.65
$ 1,389.65
1200
$5,975.85
$25,975.85
1196
$1,458.84
$14,058.84
The alterations of the amounts of the checks were crudely done and were obvious from a cursory examination of the checks. In addition, in the lower right-hand corner of each check is a magnetic ink printing which shows the amount for which the check cleared the bank. Rodriguez called the alterations to Mr. Kness' attention, *453 and Mr. Kness stated that he wanted to go home and talk to Mrs. Kness. Mr. Kness returned to Rodriguez' office later that day, stated that his wife had altered the checks, and offered to pay any proposed deficiency in order to get the matter settled. A comparison of the "Loan Repayments" page provided to Rodriguez in early July 1981 with the original of the Farm Book disclosed that an entry on the Farm Book "Loan Repayments" page for January 3, 1978 had been erased sometime prior to Mr. Kness' presentation of the Farm Book on July 14, 1981. The erasure eliminated the record of the repayment of $126,021.12 made from the sale of 240 head of cattle on January 3, 1978. Petitioners understated their taxable income on their joint returns for 1978 and 1979 in the respective amounts of $33,268 and $108,619. As a result, they understated their income tax liabilities for those years in the respective amounts of $18,520 and $62,667. In the notice of deficiency, respondent determined that petitioners are liable for the additions to tax set forth above. OPINION Section 6653(b) [2] provides for the imposition of an addition to tax if any part of any underpayment of tax is "due to fraud. *454 " Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. That burden is met if the evidence shows that the taxpayer attempted to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. In our findings are set forth virtually undisputed facts which leave us no alternative *455 but to conclude that at least part of petitioners' underpayments of tax for 1978 and 1979 were due to fraud. Petitioners' income tax returns were prepared from their Farm Book. Petitioners' bookkeeping method called for amounts received from the sale of cattle to be entered on two separate sheets of the Farm Book, the sheet for "Cattle Sales" and the sheet for "Loan Repayments." For both 1978 and 1979, cattle sales on a single date in each year in amounts in excess of $100,000 were entered on the "Loan Repayments" account but, when the Farm Book was turned over to the accountant for use in preparation of the returns, were not shown on the "Cattle Sales" account. The amount for 1978 was once entered in the "Cattle Sales" account but was erased before the Farm Book was made available to the accountant. We are convinced that petitioners knew that the total annual amounts of the "Cattle Sales" as shown in the Farm Book would be used by their accountant in preparing their returns. They also knew that the accountant was not employed to audit the Farm Book. The inference is thus clear that petitioners attempted to evade the payment of taxes on the omitted sales by concealing the correct *456 amount of the sales from their accountant and attempting to mislead him and, ultimately, the Internal Revenue Service as to the correct amounts of their income. After submitting the misleading records to the accountant, petitioners compounded their falsifications by altering the 1978 "Loan Payments" account so that it would accord with their "Cattle Sales" account. They also presented to the revenue agent the clumsily altered checks to justify additional expense deductions. Proof of such conduct supports a finding of fraud. McGee v. Commissioner,519 F.2d 1121, 1126 (5th Cir. 1975), affg. 61 T.C. 249 (1973); Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court. Petitioners cite numerous court decisions in which fraud was proved by facts not shown in this case: Petitioners did not keep a double set of books; they did not destroy any of their records; they did not hide their assets or any other source of income; they did not refuse to cooperate with the Internal Revenue Service. Petitioners also list facts in this case which have been cited in other cases in which the courts *457 have held that the proof was insufficient to establish fraud: Petitioners are elderly, in poor health, and have only a limited education; they employed a certified public accountant to prepare their returns; their single entry bookkeeping method left much room for error; some of the errors (failure to deduct certain costs) were unfavorable to petitioners; the revenue agent found fraud for only 2 years. Although it is true that the facts in this case are not as complex as the facts in many fraud cases, they are clearly established. We have no credible exculpatory explanation of the gross income omissions for either year, for the erasures and falsifications of the 1978 records, or the clumsy attempts to falsify the amounts of expense checks submitted to the revenue agent to offset the omitted income. It is true that the erasures in the "Cattle Sales" account and the alterations of the checks were so clumsily done as almost to invite detection, but the intent in making the alterations and erasures is abundantly clear. The intent was to conceal and mislead. We recognize that petitioners have worked very hard for many years in a business that requires hard work. We are also aware, *458 as Mr. Kness emphasized at the trial, that they have operated their business with borrowed funds and have been victims of high interest rates and unstable cattle prices. Nonetheless, the facts are clear that there was an attempt to evade taxes by falsifying records. In such circumstances, section 6653(b) provides that an addition to tax "shall" be imposed. We have no alternative but to apply the law as written. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
1. Sales price less sales expenses. ↩
2. Although the stipulation reflects a total in the amount of $680,500.95, the figures in this column total $680,551.04.↩
2. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩