T.C. Memo. 2006-128

UNITED STATES TAX COURT

CHESTER H. AND MICHELLE R. ROSSMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20095-03.                    Filed June 20, 2006.

     Ps failed to file Federal income tax returns for
the 1997, 1998, 1999, and 2000 taxable years.  R
determined deficiencies and additions to tax under sec.
6651(f), I.R.C., or alternatively, under sec.
6651(a)(1), I.R.C.

     <u>Held</u>:  P-H is liable for additions to tax for the
years in issue under sec. 6651(f), I.R.C.

<u>Edward G. Marshall</u>, for petitioners.

<u>Paul L. Dixon</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

     WHERRY, <u>Judge</u>:  Respondent's statutory notice of deficiency

dated August 21, 2003, determined deficiencies and additions to

tax pursuant to section 6651(f)[1] (or, alternatively, section 6651(a)(1)) and section 6651(a)(2) with respect to petitioners' Federal income taxes for 1997 through 2000.  By stipulation, the parties agreed to the following reduced tax deficiencies:

| Year | Deficiency |
|------|-----------|
| 1997 | $14,062 |
| 1998 | 24,266 |
| 1999 | 87,662 |
| 2000 | 56,572 |

After further concessions,[2] the remaining issue for decision is whether petitioner is liable for additions to tax under section 6651(f) for the 1997, 1998, 1999, and 2000 taxable years.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] By stipulation, the parties agreed that petitioner Michelle R. Rossman (Ms. Rossman) is not liable for any of the income tax deficiencies or additions to tax.  Thus, all future references to "petitioner" will be to Chester H. Rossman II.

At trial, respondent agreed that the only remaining issue was whether petitioner was liable for an addition to tax under sec. 6651(f) or, in the alternative, sec. 6651(a)(1) for 1997 through 2000.  In his pretrial memorandum, petitioner conceded the applicability of sec. 6651(a)(1) to the stipulated deficiencies if sec. 6651(f) does not apply.  The parties stipulated that petitioner is not liable for any additions to tax under sec. 6651(a)(2) for 1997 through 2000.

FINDINGS OF FACT

Background

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition in this case was filed, petitioner resided in Cedar City, Utah.

In 1992, petitioner started a business, Dependable Service Group Trust (DSG) d.b.a. Trustees Training Services (TTS) and Trust Support Group (TSG). Petitioner was a trustee of DSG, which was formed to introduce trust products promoted by National Trust Services (NTS) and Fiduciary Management Group (FMG).[3] These organizations hired petitioner to give seminars regarding the creation and the operation of their trust products. Petitioner also conducted consultations and training with regard to the creation and operation of various trust products as a side business and assisted personal acquaintances in forming trust arrangements.

---

[3] Michael D. Richmond and Rex E. Black d.b.a. FMG have promoted abusive tax schemes. See e.g., United States v. Richmond, 90 AFTR 2d 2002-6353, 2002-2 USTC par. 50,677 (N.D. Ill. 2002). NTS and its representatives Roy Fritts and Rick Prescott have also promoted abusive trust arrangements intended unlawfully to avoid Federal and State income, estate, and gift taxes. See, e.g., Kooyers v. Commissioner, T.C. Memo. 2004-281; Bowen v. Commissioner, T.C. Memo. 2001-47; United States v. Fritts, 97 AFTR 2d 2006-915 (N.D. Cal. 2005); United States v. Green, 95 AFTR 2d 2005-572 (E.D. Va. 2004); Colby B. Found. v. United States, 80 AFTR 2d 97-7689 (D. Or. 1997), affd. without published opinion 166 F.3d 1217 (9th Cir. 1999).

Petitioner described TTS as an educational program that provided services enabling participants to "learn how to read & study the law, interpret the IRS' codes and publications, and understand the 'sophisticated' manner in which Trustees should carry on business and live within the framework of Complex Trusts." The "complex trusts" to which petitioner referred included the trusts that petitioner testified NTS would promote and package together with an allegedly charitable trust to provide tax benefits. Petitioner spoke at NTS's conferences in 1998, 1999, and 2000 and provided consultation services to the principals[4] of NTS. Petitioner continued to engage in his DSG consulting business during 1997 through 2000 and did not at any time file any Federal income tax returns for DSG.[5]

Prior Taxable Years:  1987 Through 1992 and 1994 Through 1996

Respondent's agent, Jacob Riley (Agent Riley), beginning in 1997 conducted an examination of petitioner's 1994 through 1996 taxable years. He typically reviewed tax returns in the abusive promotions and abusive returns area,[6] and in connection with this work, he determined that petitioner had not yet filed Federal tax

---

[4] Petitioner testified that part of these consultation services entailed clarifying issues in a dispute between NTS principals Rick Prescott and Roy Fritts.

[5] The parties stipulated that DSG is a disregarded entity for Federal income tax purposes.

[6] Petitioner and Agent Riley first met when petitioner represented a trust during the audit of another taxpayer.

returns for the years beginning in 1987.[7]  There were, however, existing assessed tax liabilities for the taxable years 1987 through 1992 arising from substitutes for tax returns prepared by the Internal Revenue Service (IRS).  In 1997, Agent Riley contacted petitioner via letter, informing petitioner that he had not filed Federal income tax returns for the 1994 through 1996 taxable years and requesting that petitioner submit returns for those years to him.

Petitioner did not immediately reply to Agent Riley's request.  When petitioner later responded to Agent Riley, he stated that he would meet with his accountant and would submit returns for 1994 through 1996 sometime in early 1998.  During this time, petitioner continued to conduct trust training seminars advising people about their tax obligations.  Agent Riley received letters from petitioner every 30 days promising returns within the next 30 days or so.  However, petitioner did not submit returns to Agent Riley during 1998, contending that he was "still studying it out".

While waiting for petitioner to submit returns, Agent Riley received a letter dated November 17, 1998, signed by both petitioner and Edward G. Marshall (Mr. Marshall), the attorney representing petitioner in this case.  The letter titled "Opinion Letter" propounded arguments against the filing requirement and

---

[7] Ultimately, petitioner filed Forms 1040, U.S. Individual Income Tax Return, for 1994 through 1996 on May 11, 2000.

petitioner's liability for income tax.  The letter contained
petitioner's statement:

> In good faith, I have determined from written,
> reliable, legal advice from tax professionals and
> further research into the law, that I am not liable or
> subject to or for any tax under Title 26, and nothing I
> receive is subject to tax under Subtitle A.  I am not a
> 'taxpayer' as defined in Section 7701(a)(14), and as
> defined in Section 1313(b).

In the same letter, petitioner claimed to have determined
from the information he researched and studied that he should use
Form 2555, Foreign Earned Income,[8] to file his taxes.  Agent
Riley did not respond to petitioner's letter because the IRS did
not normally respond to protest letters.

Although petitioner researched the law contained in the
letter over several years, believed his positions were accurate,
and considered sending the letter to Agent Riley, petitioner
testified the positions asserted in the letter were not his
positions.  Petitioner further contended that, while he and Mr.
Marshall signed the letter, he did not know how Agent Riley
received the letter because neither petitioner nor Mr. Marshall
sent the letter to Agent Riley.

---

[8] The purpose of Form 2555, Foreign Earned Income, is for
U.S. citizens or U.S. resident aliens living in another country
to declare, among other things, their foreign earned income and
possibly qualify for certain tax benefits related to their
foreign earned income.  There is no evidence in the record, nor
did petitioner assert, that any of his income was foreign earned
income.

Petitioner stated that there was no letterhead page attached to the letter when both petitioner and Mr. Marshall signed the letter. Therefore, petitioner postulated that an associate, Jim Jensen (Mr. Jensen), also involved in TSG, sent the letter to Agent Riley substituting a retyped page one containing Mr. Marshall's letterhead. Mr. Jensen was not called and did not testify at trial.

Continuing his audit examination, in the absence of tax returns or tax documents, Agent Riley issued summonses to banks and mortgage companies in an attempt to obtain petitioner's financial information. However, Agent Riley was unable to procure petitioner's financial information because there were no bank accounts in petitioner's or his wife's name. Agent Riley then reconstructed petitioner's income using Bureau of Labor Statistics information and sent his examination report to petitioner around the end of 1999. Petitioner responded by filing a protest and a request to go to the Salt Lake City, Utah IRS Office of Appeals.

Petitioner stated that he was confused as to whether he should file a Form 1040, U.S. Individual Income Tax Return, or a Form 2555. He testified that Agent Riley asked him "to fill out 1040 returns" but that petitioner's "studies" showed the form used by the Office of Management and Budget that was "assigned [to] collect the tax on income" appeared to be Form 2555. On May

11, 2000, petitioner submitted Forms 1040 for 1994 through 1996, to an Appeals officer.

Because of the information disclosed by the tax returns, the examination of 1994 through 1996 was sent back to the examination function by Appeals and reassigned to Agent Riley. Agent Riley issued petitioner an Information Document Request (IDR) asking petitioner to provide documentation and support for the income and deductions shown on his tax returns.

After issuing the IDR, Agent Riley eventually received a response including information from another attorney, then representing petitioner, Brian Morris. Utilizing this information and the tax returns, Agent Riley discovered two bank accounts under the names Oneida Family Trust (OFT) and DSG. Petitioner possessed signature authority on both accounts. Following a bank deposits analysis, Agent Riley determined that petitioner understated his gross receipts on his 1994 through 1996 Federal tax returns. During a meeting with petitioner and Mr. Marshall on May 14, 2001, Agent Riley produced three binders containing photocopies of every check drawn on the two bank accounts for these years. As the expenditures exceeded the income shown on the 1994 through 1996 tax returns, Agent Riley asked how the additional funds were derived. Petitioner replied that he acquired the funds from gifts by family members.

After completing the examination and allowing a number of previously disputed deductions, Agent Riley then sent the case to

his supervisor. On May 29, 2002, the IRS issued to petitioner a statutory notice of deficiency for 1995 and 1996. In response, petitioner filed a petition with the Court on September 3, 2002, at docket No. 14104-02. On December 3, 2003, pursuant to a stipulation of the parties, this Court entered a decision in that case that petitioner owed a deficiency and addition to tax and penalty under sections 6651(a)(1) and 6662(a) for 1995 and a deficiency and an addition to tax under section 6651(a)(1) for 1996.

Years in Issue: 1997, 1998, 1999, and 2000

Petitioner had gross receipts from consulting for the years 1997, 1998, 1999, and 2000 of $76,090, $178,747, $303,225, and $198,990, respectively. On August 21, 2003, when respondent issued petitioner a statutory notice of deficiency for each of these years, petitioner had not yet filed a Federal income tax return for any of them. Petitioner filed a timely petition on November 24, 2003, and thereafter provided Forms 1040 for 1997 through 2000 to respondent in March and April, 2004.

The Forms 1040 reported less tax due than had been determined by the notice of deficiency. Following prolonged negotiation and petitioner's presentation of additional evidence and substantiation in support of his reporting positions, the parties agreed to the following: The 1997 deficiency of $28,074 was reduced to $14,062; the 1998 deficiency of $66,821 was

reduced to $24,266; the 1999 deficiency of $119,278 was reduced to $87,662; and the 2000 deficiency of $75,531 was reduced to $56,572.  Thus, the aggregate reduction in petitioner's total tax due from the amount determined in the statutory notice of deficiency was $107,142.

The submitted Forms 1040 tax returns for 1997 through 2000 assisted the tax resolution process by identifying claimed deductions subject to substantiation, but they were not free from material errors.  For example, petitioner's Form 1040, Schedule C for 2000 reflected gross income from DSG and its related entities of $61,655; the parties now agree the correct amount of gross income was $198,990.[9]

OPINION

I.  General Rules

Section 6651(f) imposes an addition to tax of up to 75 percent of the amount of tax required to be shown on the tax return when the failure to file a Federal income tax return timely is due to fraud.

In a case involving fraud, respondent bears the burden of proof of establishing fraud with clear and convincing evidence. Sec. 7454(a); Rule 142(b).  There are two elements of fraud under the Code:  (1) Existence of an underpayment and (2) fraudulent

---

[9] The record does not contain petitioner's Forms 1040 for 1997 through 1999.

intent with respect to some part of the underpayment.  Sec. 7454(a); Rule 142(b); Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), affg. 99 T.C. 370 (1992) and T.C. Memo. 1992-616; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Stone v. Commissioner, 56 T.C. 213, 223 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105 (1969).

Respondent determined tax deficiencies on the basis of petitioner's failure to report taxable income for each of the 1997 through 2000 taxable years.  Petitioner stipulated unreported gross income and deficiency amounts for 1997 through 2000, confirming an underpayment for each taxable year.

In ascertaining whether petitioner's failure to file was fraudulent under section 6651(f), the Court considers the same elements that are considered in imposing the fraud penalty under section 6663 and former section 6653(b).  Clayton v. Commissioner, 102 T.C. 632, 653 (1994).  Determining the existence of fraud is a question of fact and is resolved upon consideration of the entire record.  Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).

Fraud is established by proving that the taxpayer engaged in intentional wrongdoing designed to evade tax believed to be owing by conduct intended to conceal, mislead, or prevent the collection of such tax.  Petzoldt v. Commissioner, supra at 698;

Recklitis v. Commissioner, supra.  Respondent need not establish
that tax evasion was a taxpayer's primary motive but may satisfy
his burden by showing a tax-evasion motive played a part in
taxpayer's conduct.  Recklitis v. Commissioner, supra.

Fraud is not to be imputed or presumed but must be
established by some independent evidence of fraudulent intent.
Niedringhaus v. Commissioner, supra; Stone v. Commissioner, supra
at 224.  A mere understatement of tax does not establish fraud.
Estate of Upshaw v. Commissioner, 416 F.2d 737, 741 (7th Cir.
1969), affg. T.C. Memo. 1968-123; Otsuki v. Commissioner, supra.
While a taxpayer's failure to file a tax return may be an
indication of fraud, it does not, by itself, establish fraud.
Recklitis v. Commissioner, supra at 910; Kotmair v. Commissioner,
86 T.C. 1253, 1261 (1986).  However, when a taxpayer's failure to
file is combined with other signs or circumstances establishing
an intent to conceal, mislead, or otherwise prevent collection of
tax, an inference of fraud is justified.  Recklitis v.
Commissioner, supra at 911; see Kotmair v. Commissioner, supra at
1261.

## II.  Contentions of the Parties

Petitioner asserts that respondent has not met his burden of
proof under Rule 142(b) and section 7454(a).  Petitioner contends
that his failure to file tax returns timely for the years in
issue resulted from the delay by Agent Riley in examining

petitioner's 1994 through 1996 tax returns.  Petitioner contends it was prudent to learn whether his claimed deductions for 1994 through 1996 were allowable on the basis of the audit for these years before submitting tax returns for 1997 through 2000 on which he hoped to claim similar deductions.  Tactically, he believed this could assist in his presentation of claimed deductions and avoidance of penalties.

Petitioner argues that he made his 1994 through 1996 tax records available to Agent Riley, but the IRS nevertheless delayed in accepting petitioner's claimed deductions for those years, and Agent Riley never told petitioner that many of his claimed deductions were eventually allowed by respondent. Consequently, he contended that he could not complete and file his 1997 through 2000 Federal income tax returns until March or April 2004.  Petitioner believes that but for his health problems and time pressures due to the trial date he would have been able to substantiate more of his claimed expenses and further reduce his tax deficiencies.  Petitioner denies any role in the delivery of a frivolous tax protester letter to the IRS.  He maintains that his trust promotion and sales activity were directed at properly educating seminar participants regarding their tax obligations, thereby supporting the IRS's tax law enforcement goals.

Respondent determined that petitioner was liable for additions to tax under section 6651(f) for his fraudulent failure to file income tax returns for 1997 through 2000. As badges of his fraudulent failure to file, respondent maintains that petitioner attempted to hide his income through the following methods: Materially understating his income on the late-filed Federal tax returns; intentionally delaying filing his Federal tax returns; failing to cooperate in the examination process; establishing sham trusts; participating actively through 2000 in the sale and dissemination of abusive tax avoidance trusts; and advancing frivolous tax protester arguments including the letter received by respondent's agent.

III. Section 6651(f) Addition to Tax

In Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Court of Appeals for the Ninth Circuit observed that because "fraudulent intent is rarely established by direct evidence, this court has inferred intent from various kinds of circumstantial evidence". See also Spies v. United States, 317 U.S. 492, 499 (1943); Niedringhaus v. Commissioner, supra; Stone v. Commissioner, supra; Otsuki v. Commissioner, supra at 106. Thus, over the years, courts have developed a nonexclusive list of indicia as circumstantial evidence of fraudulent intent. As relevant to this report, we discuss the following "badges of fraud": (1) Understating

income, (2) failing to maintain adequate records, (3) failing to file tax returns, (4) giving implausible or inconsistent explanations of behavior, (5) concealing assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, and (8) failing to make estimated tax payments. Spies v. United States, supra at 499-500; Conti v. Commissioner, 39 F.3d at 662; Bradford v. Commissioner, supra at 307-308; Niedringhaus v. Commissioner, 99 T.C. at 211; Runkle v. Commissioner, T.C. Memo. 2005-112. While no single factor is essential to establishing fraud, the existence of several "badges of fraud" may constitute compelling circumstantial evidence of fraud. See Bradford v. Commissioner, supra.

### 1. Understating Income

This Court has held that consistent understatements of income in substantial amounts over a number of years by knowledgeable taxpayers, standing alone, may be considered persuasive evidence of fraud. Otsuki v. Commissioner, 53 T.C. at 108. For the 1995 and 1996 taxable years, respondent discovered that petitioner understated gross receipts deposited in the OFT and DSG bank accounts, over which petitioner had signatory authority. After respondent's discovery, petitioner agreed to deficiencies for those taxable years. For the years in issue, petitioner received compensation for his teaching and speaking

services at NTS and FMG conferences, providing consulting services, and engaging in several business activities.

Petitioner never filed tax returns for any of his businesses. Ultimately, he reported some of the business income on his own returns. He did not file any returns for the years in issue until 2004, several months after the statutory notice of deficiency underlying this case had been mailed determining deficiencies in his income tax and section 6651(f) additions to tax.

By stipulation, petitioner conceded gross receipts from his consulting business DSG of $76,090 for 1997, $178,747 for 1998, $303,225 for 1999, and $198,990 for 2000, and at trial, petitioner admitted he significantly understated gross income for 2000 on the Form 1040 he submitted to respondent in March or April of 2004. Furthermore, when Kevin Davis (Agent Davis), an IRS agent, performed an examination of petitioner's records, the examination revealed that petitioner's tax liability should have been higher than the amounts shown on his Forms 1040 for 1998 through 2000.[10] Lastly, petitioner's self-serving statement that he agreed to the stipulated deficiency amounts for the years in issue only because he was "worn out" from his dealings with the IRS fails to persuade the Court that the acknowledged tax

_____

[10] At trial, Agent Davis could not remember whether this situation also pertained to the 1997 taxable year.

deficiencies and failure to file timely returns are irrelevant to the fraud issue.  Thus, petitioner's failure:  (1) To fully substantiate claimed deductions, (2) to report substantial amounts of income for the years in issue, and (3) to report income in prior taxable years is a pattern of conduct probative of fraud.  See Estate of Upshaw v. Commissioner, 416 F.2d at 741.

## 2. Failing To Maintain Adequate Records

Petitioner admitted he was a poor bookkeeper.  Although he claimed to "keep everything":  "I have every receipt.  I have everything.  I just don't have it organized, and I didn't get a chance to substantiate", he did not, however, maintain his bank records.  Petitioner did not attempt to obtain bank records for 2000 because he claimed that in 2004 it was too costly for him to do so.  The extent of petitioner's record maintenance was described by Agent Davis as three plastic tubs containing records spanning various years.

Although petitioner kept some records, he did not give any records to Agent Riley regarding his income when Agent Riley asked petitioner to file returns for the years in issue.  When the records were eventually provided to the IRS, they were insufficient to substantiate many claimed deductions.  For example, when Agent Davis examined petitioner's records with respect to contributions and meals and travel expenses for the years in issue, he allowed only some of the deductions, noting

that petitioner had substantiation problems with other claimed deductions. Petitioner failed to comply with repeated requests from Agent Riley for records, and his actions show no apparent effort to maintain adequate records from which Agent Davis could develop an accurate accounting of petitioner's finances.

### 3. Failing To File Tax Returns

Petitioner failed to file timely tax returns for 1994 through 2000, and his excuse for not filing timely returns for the years in issue was that his "intent was to get an understanding on 1994, 1995 and 1996 and that I would file the 1997, 1998, 1999 and 2000 as soon as I could, but that I had [an] intention of getting those all cleared up this [2003] year." Petitioner did not file returns for 1994 through 1996 until May 11, 2000, and did not file returns for 1997 through 2000 until March or April 2004. In both cases, the tax returns were filed only after respondent issued statutory notices of deficiency to petitioner.

In determining fraudulent intent, the Court considers as relevant a taxpayer's intelligence, education, and tax expertise. Iley v. Commissioner, 19 T.C. 631, 635 (1952). While the record does not indicate that petitioner received any special education or training in the tax laws, he promoted himself as a business person skilled in providing seminars on trusts and tax planning.

Petitioner admitted that he knew he had a Federal income tax "liability or a responsibility" to file a Federal income tax "return or a statement".  By his own testimony, petitioner purported to advise people on timely filing returns and timely paying taxes.  Thus, petitioner should have been and was aware of his obligations to file a tax return and pay taxes timely.  Petitioner's actions over several years established a pattern of failing to file returns.  Petitioner's reasons for failing to file do not constitute mere negligence; rather, they are an indicator of intentional effort to delay payment of the income tax due.

4. <u>Giving Implausible or Inconsistent Explanations of Behavior</u>

Petitioner testified that he was an advocate for the IRS in his consulting business encouraging seminar participants to timely file their tax returns.  Yet, petitioner did not file his returns or pay his taxes timely.  Petitioner's claimed position concerning the IRS and the filing and the payment of taxes is inconsistent with his behavior during the 1994 through 2000 taxable years.  Furthermore, petitioner's explanation that he was waiting for resolution on his 1994 through 1996 tax returns in order to file tax returns for 1997 through 2000 is not persuasive, given his business background and his familiarity with the timely filing requirement.

Taxpayers must file tax returns each and every year for which gross income exceeds a certain threshold amount. Sec. 6012(a)(1). Each tax year represents a new liability and a separate cause of action. Commissioner v. Sunnen, 333 U.S. 591, 598-599 (1948). Petitioner is not entitled to use Agent Riley's investigation of previous tax years' returns as an excuse for failing to file current year returns. Moreover, the Court does not agree that petitioner's alleged confusion as to whether to file a Form 1040 or Form 2555 is a valid excuse to delay filing either form.

Petitioner believed NTS and FMG had promoted "a lot of very big misconceptions to taxpayers". As a result, he claimed that he started educating people about NTS's and FMG's fallacies and misconceptions in 1992. Despite petitioner's asserted beliefs regarding NTS's and FMG's promoted misconceptions, petitioner was hired independently by NTS and FMG to conduct seminars sponsored by them. He also assisted in the formation of the NTS and FMG promoted trusts. Petitioner's tax returns for 1997 through 2000 revealed that he continued to promote for profit abusive trust schemes marketed by NTS and FMG through at least 2000. The Court finds petitioner's testimony to be self-serving and contradicted by his actions. The Court deems petitioner's reasons for failing to file timely his tax returns to be manufactured and not a defense to fraud.

### 5. Concealing Assets

For the taxable years 1994 through 1996, petitioner took affirmative steps to conceal his assets and income, forcing respondent to serve summonses on banks and mortgage companies, to use Bureau of Labor Statistics information, and to implement a bank deposits analysis in order to discover bank accounts, recreate petitioner's income, and eventually determine understatements of income.

For taxable years 1997 through 2000, petitioner continued to conduct business in the name of DSG. By not correctly reporting the income earned by DSG, a disregarded trust, either on DSG's own return or on petitioner's Form 1040, and continuing to operate under DSG, there is a strong inference that petitioner did so with the intent to conceal his income.

### 6. Failing To Cooperate With Tax Authorities

Petitioner did not cooperate with Agent Riley's attempts to obtain tax returns or financial information for the years in issue. On December 2, 2002, petitioner informed Agent Riley that returns were being prepared, when, in fact, they were not. When respondent issued a notice of deficiency on August 21, 2003, petitioner had still not filed the relevant tax returns. He appeared to have eventually submitted Forms 1040 only to obtain deductions to decrease the deficiencies owed.

During an October 2004 meeting, petitioner finally provided records to Agent Davis.  The Court concludes that petitioner's tardy actions in providing records to Agent Davis were an attempt to forestall further investigation and substantiate his deductions on his late-filed returns.  Petitioner's pattern of noncompliance is indicative of a fraudulent failure to file for the taxable years in issue.

7. Engaging in Illegal Activities or Attempting to Conceal Illegal Activities

Petitioner established DSG as a trust that purported to act as his business entity.  He disclosed the trust's income and expenses for the first time on Forms 1040 submitted woefully late, after a notice of deficiency for the years in issue had already been received.  The Court may infer fraudulent conduct based on petitioner's activities involving trusts.  See Muhich v. Commissioner, T.C. Memo. 1999-192 (holding that trusts designed to avoid Federal income tax were sham trusts), affd. 238 F.3d 860 (7th Cir. 2001).

Taxpayers are generally allowed to arrange and conduct their affairs and structure their transactions to minimize any adverse tax implications.  See Gregory v. Helvering, 293 U.S. 465, 469 (1935); Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980).  However, where a sham transaction has no economic effect other

than creation of income tax losses, it will not be recognized for tax purposes.  Zmuda v. Commissioner, 731 F.2d 1417, 1421 (9th Cir. 1984) (citing Thompson v. Commissioner, 631 F.2d 642, 646 (9th Cir. 1980), affg. 66 T.C. 1024 (1976)), affg. 79 T.C. 714 (1982).

Petitioner is not a stranger to disregarded trusts.  In Castro v. Commissioner, T.C. Memo. 2001-115, this Court held that a trust created by DSG for Kevin Castro was a "flagrant tax avoidance scheme" and properly disregarded for Federal tax purposes because it lacked economic substance.[11]  Petitioner's involvement, himself and through DSG, in disregarded trusts as in Castro and in the instant case demonstrates his continued association with sham transactions and is further evidence of fraudulent conduct.

### 8. Failing To Make Estimated Tax Payments

Petitioner did not file estimated tax forms or timely pay his taxes due for the years in issue.  When asked at trial whether petitioner could recall whether he made any estimated tax payments for the years at issue, petitioner replied:  "No, I did not."  Moreover, there is no evidence in the record that petitioner made any payments for estimated taxes.

---

[11] The Court notes that counsel for petitioners in Castro v. Commissioner, T.C. Memo. 2001-115, and in the instant case is the same individual.

IV.  Conclusion

On the basis of the record and considering all the facts and circumstances in this case, petitioner's actions demonstrate a majority of the indicia of fraud considered by this Court. Respondent has met his burden of proof by providing clear and convincing evidence that petitioner not only established a pattern of failing to file income tax returns, but he also created trusts designed to conceal his income, thereby knowingly attempting to evade taxes.  Thus, respondent has shown that at least some portion of the underpayment for each of the years in issue was due to fraud.  Moreover, petitioner did not demonstrate that any portion of the underpayment was not attributable to fraud.  Accordingly, the Court finds that petitioner is liable for an addition to tax under section 6651(f) for 1997 through 2000.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing and concessions made by respondent,

Decision will be entered

under Rule 155.